# **EXHIBIT 1**

**FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM**

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK:  COMMERCIAL DIVISION**

MARATHON CRE 2018-FL1 ISSUER, LTD.,

Plaintiff,

-against-

257-263 W 34th STREET LLC, SORABH
MAHESHWARI, JUSTIN EHRLICH, CHAIM
LEBOWITZ, ISSAC LAUFER, SUKENIK,
SEGAL & GRAFF, P.C., ROBERT ETTINGER,
P.E., P.C., E&W WHOLESALE ELECTRICAL
INC. and "JOHN DOES" 1-100, said names
being fictitious and unknown to Plaintiff, such
persons or entities having or claiming an interest
in or lien on the premises described in the
Complaint,

Defendants.

Index No.

**SUMMONS**

Foreclosure of:
257-263 W 34th Street
New York, New York 10001

Block:  784
Lot:  8

**TO THE ABOVE-NAMED DEFENDANTS**:

YOU ARE HEREBY SUMMONED to answer the Complaint of Plaintiff, a copy of
which is herewith served upon you, and to serve copies of your answer upon the undersigned as
attorneys for the Plaintiff, Cole Schotz P.C., whose address is 1325 Avenue of the Americas, 19th
Floor, New York, New York 10019, within twenty (20) days after service of the Complaint,
exclusive of the day of service, or within thirty (30) days if the completion of service is made in
any manner other than by personal delivery within the state.  In case of your failure to answer the
Complaint, judgment will be taken against you by default for the relief demanded therein.

1

62517/0001-41216070v5

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

Dated: New York, New York
       September 15, 2021

COLE SCHOTZ P.C.

By:   */s/ James T. Kim*
     James T. Kim, Esq.
     Jed M. Weiss, Esq.
     Matthew A. Barish, Esq.
     Molly G. Rothschild, Esq.
     *Attorneys for Plaintiff*
     1325 Avenue of the Americas, 19th Floor
     New York, New York 10019
     (212) 752-8000

TO:

**257-263 W 34th Street LLC**
Churchill Real Estate Holdings, LLC
7 Mercer Street, 2nd Floor
New York, New York 10013

**Sorabh Maheshwari**
c/o Churchill Real Estate Holdings, LLC
7 Mercer Street, 2nd Floor
New York, New York 10013

**Justin Ehrlich**
c/o Churchill Real Estate Holdings, LLC
7 Mercer Street, 2nd Floor
New York, New York 10013

**Chaim Lebowitz**
c/o Churchill Real Estate Holdings, LLC
7 Mercer Street, 2nd Floor
New York, New York 10013

**Issac Laufer**
6 Medical Plaza
Glen Cove, New York 11542

**John Does 1 through 100**
Addresses Unknown

**E&W Wholesale Electrical Inc.**
199 Lee Ave., Suite 595
Brooklyn, New York 11211

**Sukenik, Segal & Graff, P.C.**
404 Fifth Avenue, 5th Floor
New York, New York 10018

**Robert Ettinger, P.E., P.C.**
505 Eighth Avenue
New York, New York 10018

2

62517/0001-41216070v5

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK:  COMMERCIAL DIVISION**
........................................................................................

MARATHON CRE 2018-FL1 ISSUER, LTD.,

                        Plaintiff,

            -against-

257-263 W 34th STREET LLC, SORABH
MAHESHWARI, JUSTIN EHRLICH, CHAIM
LEBOWITZ, ISSAC LAUFER, SUKENIK,
SEGAL & GRAFF, P.C., ROBERT ETTINGER,
P.E., P.C., E&W WHOLESALE ELECTRICAL
INC. and "JOHN DOES" 1-100, said names being
fictitious and unknown to Plaintiff, such persons
or entities having or claiming an interest in or lien
on the premises described in the Complaint,

                        Defendants.
........................................................................................

Index No.

**COMPLAINT**

Foreclosure of:
257-263 W 34th Street
New York, New York 10001

Block:  784
Lot:  8

 

        Plaintiff, Marathon CRE 2018-FL1 Issuer, Ltd. ("Plaintiff" or "Lender"), by and through

its undersigned counsel, Cole Schotz P.C., as and for its Complaint (the "Complaint"), against

defendants, 257-263 W 34th Street LLC ("Mortgage Borrower"), Sorabh Maheshwari

("Maheshwari"), Justin Ehrlich ("Ehrlich"), Chaim Lebowitz ("Lebowitz"), Issac Laufer

("Laufer", Maheshwari, Ehrlich and Lebowitz are collectively, the "Guarantors"), Sukenik,

Segal & Graff, P.C. ("SSG"), Robert Ettinger, P.E., P.C. ("Ettinger"), E&W Wholesale

Electrical Inc. ("E&W") and John Does 1 through 100 ("John Does", Mortgage Borrower,

Guarantors, SSG, Ettinger and E&W are collectively, the "Defendants"), hereby states as

follows:

## INTRODUCTION

        1.      This is a commercial mortgage foreclosure action brought by Plaintiff, pursuant to

Article 13 of New York's Real Property Law ("RPAPL"), to foreclosure on three (3) mortgages

**FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM**        INDEX NO. 655493/2021

NYSCEF DOC. NO. 1                                                                        RECEIVED NYSCEF: 09/15/2021

in the original aggregate amount of $52 million that are encumbering real property located at 257-263 W 34th Street, New York, New York, following payment defaults by Mortgage Borrower that occurred in May, June and July 2021, and are continuing.

## THE PARTIES

2.      Plaintiff is a company incorporated in the Cayman Islands with limited liability, with an office located at One Bryant Park, 38th Floor, New York, New York 10036.

3.      Upon information and belief, Mortgage Borrower is a limited liability company organized and existing under the laws of the State of New York, having a principal place of business located at c/o Churchill Real Estate Holdings, LLC, 7 Mercer Street, 2nd Floor, New York, New York 10013.

4.      Upon information and belief, Maheshwari is an individual residing in the State of New York with a place of business located at c/o Churchill Real Estate Holdings, LLC, 7 Mercer Street, 2nd Floor, New York, New York 10013, and is a guarantor of the Loans (as defined herein).

5.      Upon information and belief, Ehrlich is an individual residing in the State of New York with a place of business located at c/o Churchill Real Estate Holdings, LLC, 7 Mercer Street, 2nd Floor, New York, New York 10013, and is a guarantor of the Loans.

6.      Upon information and belief, Lebowitz is an individual residing in the State of New York with a place of business located at c/o Churchill Real Estate Holdings, LLC, 7 Mercer Street, 2nd Floor, New York, New York 10013, and is a guarantor of the Loans.

7.      Upon information and belief, Laufer is an individual residing in the State of New York with a place of business located at 6 Medical Plaza, Glen Cove, New York 11542, and is a guarantor of the Loans.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

8.      Upon information and belief, SSG is a professional service corporation organized and existing under the laws of the State of New York, having a principal place of business located at 404 Fifth Avenue, 5th Floor, New York, New York 10018.

9.      Upon information and belief, Ettinger is a professional service corporation organized and existing under the laws of the State of New York, having a principal place of business located at 505 Eighth Avenue, New York, New York 10018.

10.     Upon information and belief, E&W is a business corporation organized and existing under the laws of the State of New York, having a principal place of business located at 199 Lee Avenue, Suite 595, Brooklyn, New York 11211.

11.     Upon information and belief, John Does 1 through 100 are unknown to Plaintiff, such persons or entities having or claiming an interest in or lien on the premises described herein.

## JURISDCTION AND VENUE

12.     This Court has personal jurisdiction over the Defendants pursuant to CPLR §§ 301 and 302 because the Defendants maintain offices in New York, transact business in New York, and/or own, use or possess real property situated in New York.

13.     Venue is proper in New York County pursuant to CPLR § 507 because the real property that is the subject of this action is situated in New York County, New York.

## FACTUAL BACKGROUND

### The Mortgage Loans

14.     In June 2019, Mortgage Borrower obtained three (3) loans from Marathon Real Estate Debt Fund, L.P. ("Marathon") in the original aggregate amount of $52,000,000.00 in order to fund the completion of construction of a real estate development project located at 257-

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

263 W 34th Street, New York (the "Mortgaged Property"), and to refinance existing debt that was encumbering the Mortgaged Property.

15.     On or about June 17, 2019, Mortgage Borrower and Marathon entered into a certain Senior Loan Agreement dated as of that date (the "Senior Loan Agreement"), whereby Marathon agreed to loan to Mortgage Borrower the original principal amount of $40,096,500.00 (the "Senior Loan"). A true and correct copy of the Senior Loan Agreement is attached hereto as Exhibit "A".

16.     Under the terms of the Senior Loan Agreement, Mortgage Borrower agreed to utilize the proceeds from the Senior Loan to: (i) pay off existing mortgages encumbering the Mortgaged Property; (ii) pay cost and expenses incurred in connection with the closing of the Senior Loan; and (iii) pay certain costs and expenses required for completing the development of the Mortgaged Property.

17.     Simultaneous with the execution of the Senior Loan Agreement, Mortgage Borrower executed and delivered to Marathon that certain Senior Loan Consolidation, Modification, and Extension Promissory Note, dated as of June 17, 2019, in the principal amount of $40,096,500.00 (the "Senior Note"). A true and correct copy of the Senior Note is attached hereto as Exhibit "B".

18.     Repayment of the Senior Note is secured by, among other things, that certain Senior Loan Mortgage, Consolidation, Modification and Extension Agreement, dated as of June 17, 2019, executed by Mortgage Borrower in favor of Marathon, in the principal amount of $40,096,500.00 (the "Senior Mortgage"). A true and correct copy of the Senior Mortgage is attached hereto as Exhibit "C".

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

19.     The Senior Mortgage was duly recorded in the Office of the City Register of the City of New York on June 28, 2019 at City Register File No. (CRFN) 2019000204164 (the Senior Mortgage, Senior Loan Agreement and the Senior Note are collectively, the "Senior Loan Documents").

20.     On or about June 17, 2019, Marathon and Mortgage Borrower also entered into a certain Building Loan Agreement dated as of that date (the "Building Loan Agreement"), whereby Marathon agreed to loan to Mortgage Borrower the original principal amount of $6,908,500.00 (the "Building Loan"). A true and correct copy of the Building Loan Agreement is attached hereto as Exhibit "D".

21.     Under the terms of the Building Loan Agreement, Mortgage Borrower agreed to utilize the proceeds from the Building Loan to pay certain costs and expenses required for completing the development of the Mortgaged Property.

22.     Simultaneous with the execution of the Building Loan Agreement, Mortgage Borrower executed and delivered to Marathon that certain Building Loan Promissory Note, dated as of June 17, 2019, in the principal amount of $6,908,500.00 (the "Building Note"). A true and correct copy of the Building Note is attached hereto as Exhibit "E".

23.     Repayment of the Building Note is secured by, among other things, that certain Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of June 19, 2017, executed by Mortgage Borrower in favor of Marathon, in the principal amount of $6,908,500.00 (the "Building Mortgage"). A true and correct copy of the Building Mortgage is attached hereto as Exhibit "F".

24.     The Building Mortgage was duly recorded in the Office of the City Register of the City of New York on June 28, 2019 at City Register File No. (CRFN) 2019000204167 (the

7

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM          INDEX NO. 655493/2021

NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 09/15/2021

Building Mortgage, Building Loan Agreement and the Building Note are collectively, the "Building Loan Documents").

25.    In addition to the Senior Loan and Building Loan, on or about June 17, 2019, Marathon and Mortgage Borrower entered into a certain Project Loan Agreement dated as of that date whereby Marathon agreed to loan to Mortgage Borrower the original principal amount of $4,995,000.00 (the "Project Loan Agreement").  A true and correct copy of the Project Loan Agreement is attached hereto as Exhibit "G".

26.    Under the terms of the Project Loan Agreement, Mortgage Borrower agreed to utilize the proceeds from the Project Loan to:  (i) pay costs and expenses incurred in connection with the closing of the loans; (ii) pay interest and other amounts as set forth in the Loan Documents (as defined below); and (iii) pay certain costs and expenses required for completing the development of the Mortgaged Property that were not covered by the Building Loan.

27.    Simultaneous with the execution of the Project Loan Agreement, Mortgage Borrower executed and delivered to Marathon that certain Project Loan Promissory Note, dated as of June 17, 2019, in the principal amount of $4,995,000.00 (the "Project Note"; along with the Senior Note and Building Note are collectively, the "Notes").  A true and correct copy of the Project Note is attached hereto as Exhibit "H".

28.    Repayment of the Project Note is secured by, among other things, that certain Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of June 17, 2019, executed by Mortgage Borrower in favor of Marathon, in the principal amount of $4,995,000.00 (the "Project Mortgage").  A true and correct copy of the Senior Note is attached hereto as Exhibit "I".

8

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

29.     The Project Mortgage was duly recorded in the Office of the City Register of the City of New York on June 28, 2019 at City Register File No. (CRFN) 2019000204170 (the Project Mortgage, Project Loan Agreement and the Project Note are collectively, the "Project Loan Documents").

30.     The Senior Mortgage, Building Mortgage and Project Mortgage (collectively, the "Mortgages") are collateralized by real property and improvements located at 257-263 West 34th Street, New York County, New York, New York (Block 784, Lot 8) (i.e., the Mortgaged Property), which is owned by Mortgage Borrower.

31.     As additional security for the Mortgage Loans (defined below), the Guarantors each executed that certain guaranty of recourse obligations, dated as of the date of the Loans (the "Guaranty"), whereby they guaranteed (to Marathon) certain of Mortgage Borrower's obligations under the Mortgage Loan Documents (as defined below) pursuant to the terms provided therein.  A true and correct copy of the Guaranty is attached hereto as Exhibit "J".

32.     The Senior Loan, Building Loan and Project Loan are collectively, the "Mortgage Loans" and the Senior Loan Documents, Building Loan Documents and the Project Loan Documents, as amended, restated, replaced, supplemented or otherwise modified are collectively, the "Mortgage Loan Documents".

**The Assignments of the Mortgage Loans**

33.     On or around June 24, 2019, the Mortgage Loans were assigned from Marathon to Marathon CRE 2018-FL1 REIT, LLC ("Marathon REIT"), pursuant to those assignments of mortgages, each dated as of that date (the "First Assignment").  True and correct copies of the First Assignment are attached hereto as Exhibit "K".

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM          INDEX NO. 655493/2021

NYSCEF DOC. NO. 1                                                  RECEIVED NYSCEF: 09/15/2021

34.    On or around June 24, 2019, the Mortgage Loans were assigned from Marathon REIT to Plaintiff, pursuant to those assignments of mortgages, each dated as of that date (the "Second Assignment").  True and correct copies of the Second Assignment are attached hereto as Exhibit "L".

35.    Accordingly, Plaintiff is the owner and holder of the Mortgage Loans and all of the Mortgage Loan Documents, including, but not limited to, the Mortgages, the Notes and Guaranty.

**Mortgage Borrower's Continuing Defaults Under the Mortgage Loan Documents**

36.    The Mortgage Loan Documents impose various obligations upon Mortgage Borrower including, but not limited to, timely payment of the monthly interest due and owing to Plaintiff by a date certain and payment of the real estate taxes with respect to the Mortgaged Property.

37.    The Mortgage Loan Documents provide that an "Event of Default" includes Mortgage Borrowers' failure to pay the monthly interest payments when due and failure to strictly comply with its obligations to timely pay the real estate taxes with respect to the Mortgaged Property.

38.    Following the occurrence of an Event of Default (as defined in the Mortgage Loan Documents), Plaintiff may accelerate the Mortgage Loans and declare that all outstanding principal, accrued interest and costs and expenses, including default interest, shall be immediately due and payable.

39.    Mortgage Borrower has failed to comply with the Mortgage Loan Documents, and such failures constitute Events of Default under the Mortgage Loan Documents. Specifically, Marathon Issuer served Mortgage Borrower with a notice of default, acceleration

10

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 09/15/2021

and reservation of rights, dated June 24, 2021 (the "Notice of Default"), notifying Mortgage

Borrower that various Events of Default had occurred and were continuing, including, but not

limited to, the Mortgage Borrower's failure to pay the monthly interest payments due on May 11,

2021 and June 11, 2021, pursuant to Section 3.7(a) of the Loan Agreements, which constituted

an Event of Default under Section 10.1(a) of the Loan Agreements.  A true and correct copy of

the First Notice of Default to Mortgage Borrower is attached hereto as Exhibit "M".

40.     The Notice of Default additionally notified Mortgage Borrower that it had failed

to pay the real estate taxes due in January 2021 with respect to the Mortgaged Property, pursuant

to Section 5.2(e) of the Loan Agreements, which constituted an Event of Default under Section

10.1(b) of the Loan Agreements.  (*Id.*).

41.     The Notice of Default further advised Mortgage Borrower that it was exercising

its right to declare the outstanding principal balance of the Loans, together with all accrued and

unpaid interest, and all other sums due under the Loan Documents, to be immediately due and

payable in full.  (*Id.*).

42.     The following amounts are due and owing to Plaintiff under the Mortgage Loan

Documents, no part of which has been paid by the Mortgage Borrower:

| | |
|---|---|
| **Aggregate Principal Balance** | $50,325,217.75 |
| **Loan Interest** | $1,170,724.77 |
| **Default Interest** | $794,214.93 |
| **Protective Advances** | $350,327.58 |
| **Interest on Protective Advances** | $7,837.34 |
| **Total Outstanding Amount (as of September 1, 2021)** | **$52,648,322.37** |

62517/0001-41216070v5

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 09/15/2021

43.    The outstanding indebtedness is exclusive of other costs and expenses that Plaintiff has incurred, and will continue to incur, in connection with enforcing Plaintiff's rights under the Mortgage Loan Documents during the pendency of this action.

44.    The Mortgage Loan Documents further expressly provide that Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred in connection with pursuing any of its rights or remedies under the Mortgage Loan Documents. Specifically, Section 10.2(h) of the Loan Agreements provides that upon the occurrence of an Event of Default, Plaintiff may accelerate the Loans and demand payment for its attorneys' fees and expenses. Section 7.2(b) of the Mortgages additionally provides that:

> [Plaintiff] may (1) institute and maintain an action of mortgage foreclosure against the [Mortgaged] Property, or any portion thereof, and the interest of [Mortgage] Borrower therein, (2) institute and maintain an action on any instruments evidencing the Note[s] or any portion thereof, and (3) take such other action at law or in equity for the enforcement of any of the Loan Documents as the law may allow, **and in each such action [Plaintiff] shall be entitled to all costs of suit and attorneys' fees.**

(*See* Exs., C, F, and I, Sections 7.2(b)).

45.    The Guarantors are named as Defendants in this Complaint because they are guarantors of the Loans, may be liable for sums due under the Loan Documents by virtue of their obligations under the Guaranties, and may have an equitable right of redemption in the Mortgaged Property. Plaintiff reserves its right to pursue a deficiency judgment, if any, against the Guarantors.

46.    SSG, Ettinger and E&W are named as Defendants in this Complaint because any claim that they have in the Mortgaged Property is subject and subordinate to Plaintiff's lien evidenced by and described in the Mortgages.

12

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

47.    Any claims that any of the Defendants in this action have in the Mortgaged Property is subject and subordinate to Plaintiff's lien evidenced by, and described in, the Mortgages.

48.    Pursuant to the Mortgage Loan Documents, Plaintiff may enter upon the Mortgaged Premises, institute a foreclosure action with respect to the Mortgaged Premises, sell the Mortgaged Premises, and appoint a receiver for the Mortgaged Premises.

### FIRST CAUSE OF ACTION
### (Judgment of Foreclosure)

49.    Plaintiff repeats and realleges each of the foregoing allegations as if fully stated herein.

50.    Plaintiff has fulfilled all of its obligations under the Mortgage Loan Documents. All conditions precedent to the commencement of this action have been performed, have occurred, or are excused.

51.    This action does not seek to foreclose a high-cost home loan, subprime loan or other non-traditional mortgage, because, among other things, this is a commercial property and Mortgage Borrower is not a natural person, nor was the debt incurred by Mortgage Borrower primarily for personal, family or household purposes.  Accordingly, the provisions of RPAPL §§ 1302 and 1304, and NYCRR § 202.12-a do not apply.

52.    No other action or proceeding has been brought at law or otherwise for the recovery of all sums secured by the Mortgages and Notes, or any portion thereof.

53.    Plaintiff seeks a judgment, as more fully set forth below, foreclosing the Mortgages with respect to the Mortgaged Property.

54.    In the event that Plaintiff possesses any other lien(s) against said Mortgaged Property by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM   INDEX NO. 655493/2021
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 09/15/2021

lien(s) shall not be merged in Plaintiff's causes of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek a determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

55.     Plaintiff shall be deemed to not have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective.

<u>**SECOND CAUSE OF ACTION**</u>
**(Foreclosure - the Senior Mortgage)**

56.     Plaintiff repeats and realleges each of the foregoing allegations as if fully stated herein.

57.     Plaintiff is the present holder of all of the Mortgage Loan Documents, including the Senior Mortgage and Senior Note.

58.     Mortgage Borrower is presently in default under the express terms of the Mortgage Loan Documents by, among other things:  (i) failing to pay the monthly interest payments due on May 11, 2021 and June 11, 2021, pursuant to Section 3.7(a) of the Loan Agreements, which constituted an Event of Default under Section 10.1(a) of the Loan Agreements; and (ii) failing to pay the real estate taxes due in January 2021 with respect to the Mortgaged Property, pursuant to Section 5.2(e) of the Loan Agreements, which constituted an Event of Default under Section 10.1(b) of the Loan Agreements.

59.     Plaintiff seeks to foreclose upon the Senior Mortgage and recover the outstanding principal amount of $41,230,480.42 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Mortgage Loan Documents, including costs and its attorneys' fees, and that Mortgage Borrower be adjudged to pay the whole

62517/0001-41216070v5

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 09/15/2021

residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Property and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be by the Court as provided in Section 1371 of the RPAPL.

60.    No other action or proceeding has been brought to recover any part of any indebtedness against Mortgage Borrower as alleged herein arising under the Mortgage Loan Documents.

**THIRD CAUSE OF ACTION**
**(Foreclosure - the Building Mortgage)**

61.    Plaintiff repeats and realleges each of the foregoing allegations as if fully stated herein.

62.    Plaintiff is the present holder of all of the Mortgage Loan Documents, including the Building Mortgage and Building Note.

63.    Mortgage Borrower is presently in default under the express terms of the Mortgage Loan Documents by, among other things:  (i) failing to pay the monthly interest payments due on May 11, 2021 and June 11, 2021, pursuant to Section 3.7(a) of the Loan Agreements, which constituted an Event of Default under Section 10.1(a) of the Loan Agreements; and (ii) failing to pay the real estate taxes due in January 2021 with respect to the Mortgaged Property, pursuant to Section 5.2(e) of the Loan Agreements, which constituted an Event of Default under Section 10.1(b) of the Loan Agreements.

64.    Plaintiff seeks to foreclose upon the Building Mortgage and recover the outstanding principal amount of $6,412,614.40 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Mortgage Loan Documents, including costs and its attorneys' fees, and that Mortgage Borrower be adjudged to

15

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 1

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Property and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be by the Court as provided in Section 1371 of the RPAPL.

65.     No other action or proceeding has been brought to recover any part of any indebtedness against Mortgage Borrower as alleged herein arising under the Mortgage Loan Documents.

**FOURTH CAUSE OF ACTION**
**(Foreclosure - the Project Mortgage)**

66.     Plaintiff repeats and realleges each of the foregoing allegations as if fully stated herein.

67.     Plaintiff is the present holder of all of the Mortgage Loan Documents, including the Project Mortgage and Project Note.

68.     Mortgage Borrower is presently in default under the express terms of the Mortgage Loan Documents by, among other things:  (i) failing to pay the monthly interest payments due on May 11, 2021 and June 11, 2021, pursuant to Section 3.7(a) of the Loan Agreements, which constituted an Event of Default under Section 10.1(a) of the Loan Agreements; and (ii) failing to pay the real estate taxes due in January 2021 with respect to the Mortgaged Property, pursuant to Section 5.2(e) of the Loan Agreements, which constituted an Event of Default under Section 10.1(b) of the Loan Agreements.

69.     Plaintiff seeks to foreclose upon the Project Mortgage and recover the outstanding principal amount of $2,682,122.93 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Mortgage Loan Documents, including costs and its attorneys' fees, and that Mortgage Borrower be adjudged to pay the whole

16

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Property and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be by the Court as provided in Section 1371 of the RPAPL.

70.    No other action or proceeding has been brought to recover any part of any indebtedness against Mortgage Borrower as alleged herein arising under the Mortgage Loan Documents.

### FIFTH CAUSE OF ACTION
**(Appointment of Receiver)**

71.    Plaintiff repeats and realleges each of the foregoing allegations as if fully stated herein.

72.    Pursuant to the terms of the Mortgage Loan Documents, Mortgage Borrower assigned and transferred to Plaintiff all of its right, title, and interest in and to the rents, income, and profits derived from the Mortgaged Property and, upon an Event of Default, Plaintiff is entitled those rents, income, and profits.

73.    Pursuant to the terms of the Mortgages, Plaintiff is entitled to the appointment of a receiver upon an Event of Default.

74.    Mortgage Borrower is presently in default under the express terms of the Mortgage Loan Documents by, among other things: (i) failing to pay the monthly interest payments due on May 11, 2021 and June 11, 2021, pursuant to Section 3.7(a) of the Loan Agreements, which constituted an Event of Default under Section 10.1(a) of the Loan Agreements; and (ii) failing to pay the real estate taxes due in January 2021 with respect to the Mortgaged Property, pursuant to Section 5.2(e) of the Loan Agreements.

62517/0001-41216070v5

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

75.    Plaintiff has provided Mortgage Borrower with any and all notices required under the Mortgage Loan Documents concerning the Events of Default.

76.    All sums are now due and payable to Plaintiff under the Mortgage Loan Documents, however, despite demand for payment, Mortgage Borrower has failed and refused to pay all sums due and owing to Plaintiff.

77.    The appointment of a receiver is necessary to preserve the Mortgaged Property and to ensure that the payments rightly due and owing to Plaintiff are collected and turned over to Plaintiff for its benefit.

78.    By virtue of the express provision in the Mortgages and the Mortgage Loan Documents permitting the appointment of a receiver upon an Event of Default, Plaintiff is entitled to the appointment of a receiver.

**WHEREFORE**, Plaintiff respectfully requests judgment herein against the Defendants, and seeks the following relief:

a.    On the First Cause of Action:  that Defendants, each of them and all persons claiming under them or any of them, subsequent to the filing of the notice of pendency of this action in the Office of the Clerk of New York County, in which said Mortgaged Property is situated, and every person whose conveyance or encumbrance is subsequent or subsequently recorded, be forever barred and foreclosed of all right, claim, lien and equity of redemption in said Mortgaged Property; (ii) that the Mortgaged Property may be decreed to be sold according to law; (iii) that the monies arising from the sale of the Mortgaged Property may be brought into this Court; and (iv); the amount due to Plaintiff on the Mortgages and the Notes be adjudged, and that from the monies arising from the foregoing sale, Plaintiff be paid all amounts due

18

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

upon the Mortgage Loan Documents, including all outstanding principal, interest, and default interest to the time of such payment, together with the expenses of the sale, costs, allowances, and disbursements of this action, Plaintiff's reasonable attorneys' fees and expenses, together with any monies which may be paid by Plaintiff for taxes, water, sewer charges and assessments, insurance premiums and all other charges which may have been paid by Plaintiff to protect the security afforded by the Mortgages and the lien thereon to be paid, with interest upon said amounts from the dates of the respective payments and advances thereof, so far as the amounts of monies properly allocable thereto will pay the same;

b. On the First and Second Cause of Action:  that if after application of the net proceeds of said sale, any amount of principal, interest or other charges remain due and payable to Plaintiff, then Mortgage Borrower may be adjudged to pay any deficiency which may remain after applying all such moneys applicable thereto pursuant to RPAPL § 1371.

c. On the First and Third Cause of Action:  that if after application of the net proceeds of said sale, any amount of principal, interest or other charges remain due and payable to Plaintiff, then Mortgage Borrower may be adjudged to pay any deficiency which may remain after applying all such moneys applicable thereto pursuant to RPAPL § 1371.

d. On the First and Fourth Cause of Action:  that if after application of the net proceeds of said sale, any amount of principal, interest or other charges remain due and payable to Plaintiff, then Mortgage Borrower may be adjudged to pay any deficiency which

19

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 1
INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

may remain after applying all such moneys applicable thereto pursuant to RPAPL § 1371; and

e.  On the Fifth Cause of Action and/or upon separate application, Plaintiff shall be entitled to the appointment of a receiver for the rents, profits and other income generated by the Mortgaged Property; and

f.  Granting Plaintiff such other and further relief as to the Court may deem just and equitable under the circumstances.

Dated:  New York, New York
        September 15, 2021

COLE SCHOTZ P.C.

By:  /s/ James T. Kim
     James T. Kim, Esq.
     Jed M. Weiss, Esq.
     Matthew A. Barish, Esq.
     Molly G. Rothschild, Esq.
     *Attorneys for Plaintiff,*
     Marathon CRE 2018-FL1 Issuer, Ltd.
     1325 Avenue of the Americas, 19th Floor
     New York, New York 10019
     (212) 752-8000

20

62517/0001-41216070v5

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

# SENIOR LOAN AGREEMENT

## DATED AS OF JUNE 17, 2019

### BY AND BETWEEN

**257-263 W 34TH STREET LLC,**
a New York limited liability company,
as Borrower,

### AND

**MARATHON REAL ESTATE DEBT FUND, L.P.,**
a Delaware limited partnership,
as Lender

{01535670;3}

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

# TABLE OF CONTENTS

**ARTICLE 1 INCORPORATION OF RECITALS, EXHIBITS AND SCHEDULES** ...................................... 1

    1.1    INCORPORATION OF RECITALS. ..................................................................... 1
    1.2    INCORPORATION OF EXHIBITS. ..................................................................... 1

**ARTICLE 2 DEFINITIONS; PRINCIPLES OF CONSTRUCTION** ..................................................... 1

    2.1    DEFINITIONS. ..................................................................................... 1
    2.2    PRINCIPLES OF CONSTRUCTION. ............................................................... 22

**ARTICLE 3 BUILDING LOAN AND PROJECT LOAN DOCUMENTS** ........................................ 22

    3.1    AGREEMENT TO LEND AND BORROW. ....................................................... 22
    3.2    CONDITIONS PRECEDENT TO MAKING THE BUILDING LOAN. ......................... 22
    3.3    BUILDING LOAN ADVANCES. ......................... **ERROR! BOOKMARK NOT DEFINED.**
    3.4    HOLDBACKS TO BE FUNDED BY THE BUILDING LOAN. ................................... 23
    3.5    TERM OF THE LOAN. ............................................................................. 23
    3.6    INTEREST. ......................................................................................... 25
    3.7    BUILDING LOAN PAYMENTS. ................................................................... 27

**ARTICLE 4 FINANCIAL REPORTING COVENANTS** ................................................................. 30

    4.1    FINANCIAL INFORMATION REPORTING. ..................................................... 30

**ARTICLE 5 OPERATIONAL AND OTHER COVENANTS** ........................................................... 30

    5.1    BORROWER'S COVENANTS. ..................................................................... 30

**ARTICLE 6 BORROWER'S REPRESENTATIONS AND WARRANTIES** ....................................... 30

    6.1    BORROWER'S REPRESENTATIONS AND WARRANTIES. ................................... 30

**ARTICLE 7**    30

**SINGLE PURPOSE MATTERS** ............................................................................................... 30

    7.1    SINGLE PURPOSE. ................................................................................. 30

**ARTICLE 8 ENVIRONMENTAL MATTERS** .............................................................................. 30

    8.1    ENVIRONMENTAL REPRESENTATIONS AND WARRANTIES. ............................. 30

**ARTICLE 9 INSURANCE, CASUALTIES AND CONDEMNATION** ............................................... 31

    9.1    INSURANCE. ........................................................................................ 31

**ARTICLE 10 EVENTS OF DEFAULT AND REMEDIES** .............................................................. 31

    10.1    EVENTS OF DEFAULT. ........................................................................... 31
    10.2    REMEDIES CONFERRED UPON LENDER. ..................................................... 32

**ARTICLE 11 LOAN EXPENSE, COSTS AND ADVANCES** .......................................................... 36

    11.1    LOAN AND ADMINISTRATION EXPENSES. ................................................... 36
    11.2    RIGHT OF LENDER TO MAKE ADVANCES TO CURE BORROWER'S DEFAULTS. ..... 37
    11.3    INCREASED COSTS. ............................................................................... 37
    11.4    DOCUMENT AND RECORDING TAX INDEMNIFICATION. ................................. 37

**ARTICLE 12 SECURITIZATION** ............................................................................................. 38

    12.1    SALE OF NOTE AND SECURITIZATION. ....................................................... 38

**ARTICLE 13 GENERAL PROVISIONS** ..................................................................................... 38

    13.1    CAPTIONS. .......................................................................................... 38
    13.2    LENDER'S DISCRETION. ......................................................................... 38
    13.3    GOVERNING LAW. ................................................................................ 38

| 13.4 | JURISDICTION. | 39 |
| 13.5 | WAIVER OF JURY TRIAL. | 40 |
| 13.6 | MODIFICATION; CONSENT. | 40 |
| 13.7 | DELAY NOT A WAIVER. | 40 |
| 13.8 | WAIVERS; ACQUIESCENCE OR FORBEARANCE NOT TO CONSTITUTE WAIVER OF LENDER'S REQUIREMENTS. | 40 |
| 13.9 | PREFERENCES. | 41 |
| 13.10 | DISCLAIMER BY LENDER. | 41 |
| 13.11 | PARTIAL INVALIDITY; SEVERABILITY. | 42 |
| 13.12 | DEFINITIONS INCLUDE AMENDMENTS. | 42 |
| 13.13 | ENTIRE AGREEMENT. | 42 |
| 13.14 | WAIVER OF DAMAGES. | 42 |
| 13.15 | WAIVER OF NOTICE. | 42 |
| 13.16 | CLAIMS AGAINST LENDER. | 43 |
| 13.17 | SET-OFFS. | 43 |
| 13.18 | RELATIONSHIP. | 43 |
| 13.19 | NO THIRD PARTY BENEFICIARIES. | 44 |
| 13.20 | AGENTS. | 44 |
| 13.21 | SERVICER. | 44 |
| 13.22 | COMPONENT NOTES. | 44 |
| 13.23 | CONFLICT; CONSTRUCTION OF DOCUMENTS; RELIANCE. | 45 |
| 13.24 | INTERPRETATION. | 45 |
| 13.25 | SUCCESSORS AND ASSIGNS. | 46 |
| 13.26 | TIME IS OF THE ESSENCE. | 46 |
| 13.27 | NOTICES. | 46 |
| 13.28 | MEZZANINE LOAN. | 47 |
| 13.29 | RELEASE OF TRANSFERABLE DEVELOPMENT RIGHTS. | 48 |
| 13.30 | EXECUTION IN COUNTERPARTS. | 49 |

LIST OF EXHIBITS AND SCHEDULES TO LOAN AGREEMENT


Exhibit A                 Legal Description of Land

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

## SENIOR LOAN AGREEMENT

THIS SENIOR LOAN AGREEMENT ("**Agreement**") is made as of June 17, 2019, by and between **257-263 W 34ᵀᴴ STREET LLC**, a New York limited liability company ("**Borrower**"), and **MARATHON REAL ESTATE DEBT FUND, L.P.**, a Delaware limited partnership (collectively, with its successors and assigns, "**Lender**").

<u>RECITALS</u>

A.       Borrower is the owner in fee simple of land located at 257-263 West 34th Street in the City of New York, County of New York, State of New York, commonly known as 263 West 34th Street and legally described on <u>Exhibit A</u> attached hereto (the "**Land**"). Such Land contains improvements generally consisting of one mixed-use building containing approximately 35,111 gross square feet of space, compromising 7,768 gross square feet of subterranean retail space, 7,903 gross square feet of ground floor retail space and 19,440 gross square feet of office space (collectively, the "**Improvements**").

B.       Borrower desires to obtain the Senior Loan from Lender.

C.       Lender is willing to make the Senior Loan to Borrower, subject to and in accordance with, the conditions and terms of this Agreement and the other Loan Documents.

## PROVISIONS

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements herein contained, the parties hereto agree as follows:

## ARTICLE 1
## INCORPORATION OF RECITALS, EXHIBITS AND SCHEDULES

**1.1**      **Incorporation of Recitals.**

The foregoing preambles and all other recitals set forth herein are made a part hereof by this reference.

**1.2**      **Incorporation of Exhibits.**

The Schedules and Exhibits annexed hereto are incorporated herein as a part of this Agreement and expressly made a part hereof by this reference with the same effect as if set forth in the body hereof.

## ARTICLE 2
## DEFINITIONS; PRINCIPLES OF CONSTRUCTION

**2.1**      **Definitions**.

For all purposes of this Agreement, except as otherwise expressly provided, the following terms shall have the respective meanings set forth below:

**Additional Equity Contribution**:  A portion of Borrower's Equity Contribution in the aggregate amount of Eleven Million Nine Hundred Ninety-Four Thousand Five Hundred and No/100 Dollars ($11,994,500.00), a portion of which in the amount of Ten Million Ninety-Six Thousand and No/100 Dollars ($10,096,000.00) has been contributed by Borrower prior to the Closing Date on account of the

{01535670;3}

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM          INDEX NO. 655493/2021

NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 09/15/2021

repayment of certain existing debt of Borrower and the balance of which in the amount of One Million Ninety-Six Thousand and No/100 Dollars ($1,096,000.00) is to be contributed by Borrower after the Closing Date prior to the disbursement of the Tenant Improvement and Leasing Commission Holdback based on Borrower's Percentage in accordance with the provisions of Sections 3.2(b) and 3.4(a)(ii)(F) of the Building Loan Agreement.

**Adjusted Actual Rent**: The sum of (a) the annualization of all amounts collected from tenants of the Property for the most current month assuming twelve (12) months' expense reimbursements as calculated in accordance with the Leases for the immediately prior twelve (12) month period, excluding Casualty Proceeds, lease termination payments and other nonrecurring income and non-Property related income (as determined by Lender in its sole discretion, reasonably exercised), disbursements from the Holdback and releases from the Reserve, and income from Tenants (i) that are in occupancy under month-to-month Leases, (ii) that are in bankruptcy, even if current (iii) that are forty-five (45) or more days delinquent or have been delinquent three (3) or more times during the immediately prior twelve (12) month period, (iv) whose Leases will by their terms terminate or expire within six (6) months of the date of calculation of Adjusted Actual Rent (unless such Tenants have irrevocably exercised their renewal or extension options or otherwise entered into extension agreements with Borrower and acceptable to Lender, in either case for terms beyond such six (6) month periods), (v) that have not complied with and satisfied in all respects the notice requirements and related provisions and conditions to extend their Leases, to the extent that such provisions are then or have then previously become operational and as a result of such failure to comply with or satisfy such provisions such tenant's Lease has a remaining term of six (6) months or less, and (vi) that have surrendered, cancelled or terminated their Leases prior to their then current expiration date or have given any written notice of intent to surrender, cancel or terminate their Leases (or any material portion thereof) prior to their then current expiration date, and (b) other recurring revenue from the Property, based upon collections for the immediately prior twelve (12) month period. For purposes of calculating Adjusted Actual Rent, Lender shall include rental payments under Leases that have been executed with unaffiliated third party Tenants but under which payment of said rents has not yet commenced, provided that provided the Tenant has taken possession of its space and (i) the free rent period is less than or equal to six (6) months or (ii) if the free rent period is longer than six (6) months, the remaining free rent period is less than six (6) months, (iii) the Tenant has an investment grade credit rating or (iv) either Lender or Servicer is holding an amount on account of the Free Rent Reserve equal to all such outstanding free rent.

**Advance**: As such term is defined in Section 3.3(b)(i).

**Affiliate**: With respect to a specified person or entity, any individual, partnership, corporation, limited liability company, trust, unincorporated organization, association or other entity which, directly or indirectly, through one or more intermediaries, Controls or is Controlled by or is under common Control with such person or entity, including, without limitation, any general or limited partnership in which such person or entity is a partner.

**Agreement**: This Senior Loan Agreement.

**Alternative Rate**: A floating rate index (a)(i) that is commonly accepted by market participants in the securitization of variable rate commercial mortgage loans as a substitute for LIBOR and (ii) that is publically recognized by ISDA as an alternative to LIBOR: or (b) if a floating rate index cannot be determined using subsection (a) above, a published index that Lender determines is then-currently used by market participants in making determinations of the interest rate of variable rate commercial mortgage loans. Determinations made under this definition shall be made by Lender in its discretion and shall be final absent manifest error. Notwithstanding anything to the contrary contained herein, in no event shall

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

the Alternative Rate be less than six and ninety five one hundredths percent (6.95%) per annum (or the daily equivalent thereof).

**Alternative Rate Loan**: The Loan at any time in which the Applicable Interest Rate is based on the Alternative Rate in accordance with the provisions hereof.

**Alternative Rate Spread**: The difference (expressed as the number of basis points) between (a) the Applicable Interest Rate for the Loan on the last date the Loan was a LIBOR Loan and (b) the Alternative Rate on such date; provided, however, that if such difference is a negative number, the Alternative Rate Spread shall be zero.

**Anti-Money Laundering Laws**:  As such term is defined in Section 5.2(s).

**Applicable Interest Rate**: Either (i) the LIBOR Rate plus the LIBOR Spread with respect to any period when the Loan is a LIBOR Loan (but in no event shall such Applicable Interest Rate be less than six and ninety five one hundredths percent (6.95%)) or (ii) with respect to any period when the Loan is an Alternative Rate Loan, the Alternative Rate plus the Alternative Rate Spread.

**Applicable Lending Office**:  The lending office of Lender (or of an Affiliate of Lender) as Lender may from time to time specify to Borrower as the office by which the Loan is to be made or maintained by Lender.

**Appraisal**:  An appraisal of the Property performed in accordance with FIRREA and Lender's appraisal requirements by an independent appraiser licensed in the state in which the Property is located and selected and retained by Lender.

**Appraised Value**:  The value of the Property as set forth in an Appraisal approved and accepted by Lender or as set forth in an update of any Appraisal delivered to Lender on or before the Closing Date approved and accepted by Lender.

**Approved Accounting Method:** Means GAAP, federal tax basis accounting consistently applied, or such other method of accounting, consistently applied, as may be proposed by Borrower and reasonably acceptable to Lender.

**Approved Capital Expenditures:**  Capital Expenditures incurred by Borrower and either: (i) included in the Approved Annual Budget, or (ii) approved in writing by Lender.

**Architect:**  ME Architect P.C.

**Architect's Consent:** That certain Architect's Consent to Assignment of Architect's Agreement executed and delivered by Architect in favor of Lender.

**Assignment of Construction Documents:** That certain Assignment of Construction Documents dated as of the date hereof, issued by Borrower in favor of Lender, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

**Assignment of Contracts**: That certain Assignment of Contracts. Permits. Warranties and General Intangibles of even date herewith made by Borrower in favor of Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Assignment of Interest Rate Agreement**:  Individually and collectively, that certain Collateral Assignment of Interest Rate Agreement of even date herewith made by Borrower in favor of Lender, and acknowledged and consented to by the Counterparty thereunder, under which the Interest Rate Agreement is collaterally assigned to Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, and each Collateral Assignment of Interest Rate Agreement made after the Closing Date by Borrower in favor of Lender, and acknowledged and consented to by the Counterparty thereunder, under which each Extended Interest Rate Agreement or Substitute Interest Rate Agreement is collaterally assigned to Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Assignment of Management Agreement**:  That certain Assignment of Management Agreement and Subordination of Management Fees of even date herewith made by Borrower and Property Manager in favor of Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Authorized Representative**:  Sorabh Maheshwari and Justin Ehrlich.

**Available Cash**:  As such term is defined in Section 3.8(a).

**Award**:  Any compensation paid by any Governmental Authority in connection with a Condemnation in respect of all or any part of the Property.

**Bankruptcy Action**:  With respect to any Person, (i) such Person filing a voluntary petition under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law; (ii) the filing of an involuntary petition against such Person under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law which is not dismissed within ninety (90) days of the filing thereof, or soliciting or causing to be solicited petitioning creditors for any involuntary petition against such Person; (iii) such Person filing an answer consenting to or otherwise acquiescing in or joining in any involuntary petition filed against it, by any other Person under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law, or soliciting or causing to be solicited petitioning creditors for any involuntary petition from any Person; (iv) such Person seeking, consenting to or acquiescing in or joining in an application for the appointment of a custodian, receiver, trustee, or examiner for such Person or any portion of the Property; (v) such Person making an assignment for the benefit of creditors, or admitting, in writing or in any legal proceeding, its insolvency or inability to pay its debts as they become due; or (vi) such Person taking any action in furtherance of any of the foregoing.

**Bankruptcy Code**:  11 U.S.C. § 101 *et seq.*, as the same may be amended from time to time, and any successor statute or statutes and all rules and regulations from time to time promulgated thereunder, and any comparable foreign laws relating to bankruptcy, insolvency or creditors' rights.

**Borrower**:  As such term is defined in the opening paragraph of this Agreement, and including any successor obligor on the Loan from time to time.

**Borrower Party**: Individually or collectively, Borrower, Managing Member, Mezzanine Borrower and Principal.

**Borrower's Equity Contribution**:  An amount equal to Twenty Six Million Twenty Eight Thousand One Hundred Thirty Two and No/100ths Dollars ($26,028,132.00) contributed by Borrower composed of (a) the Initial Equity Contribution and (b) the Additional Equity Contribution, which has or shall be utilized by Borrower as of the Closing Date for costs and expenses incurred in connection with recapitalizing the Property and completing the Project in accordance with the approved Project Budget.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

**Breakeven Date:** As such term is defined in Section 5.2(f).

**Broker Agreement:** Each agreement entered into by Borrower in accordance with Section 5.1(a)(i) and on terms and with a leasing agent approved by Lender in its sole but reasonable discretion, pursuant to which such leasing agent shall provide commercial leasing agent and brokerage services with respect to the Property. For the avoidance of doubt, each of (1) that certain letter agreement, dated October 29, 2018, between Borrower and Cushman & Wakefield, Inc. for the Retail Premises and (2) that certain letter agreement, dated January 9, 2019, between Borrower and CBRE Inc. for the Office Premises, shall be deemed to be a Broker Agreement and is hereby approved by Lender.

**Building Costs:** All direct construction costs that qualify as a Cost of Improvement.

**Building Loan:** The loan in the maximum principal amount of Six Million Nine Hundred Eight Thousand Five Hundred and No/100 Dollars ($6,908,500.00), made by Lender in favor of Borrower pursuant to the Building Loan Agreement.

**Building Loan Agreement:** That certain Building Loan Agreement dated as of the date hereof, from Borrower to Lender, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

**Building Loan Funds:** As such term is defined at Section 3.3(a).

**Building Loan Mortgage:** That certain Building Loan Mortgage, Assignment of Rents and Security Agreement, effective as of the date hereof, executed by delivered by Borrower for the benefit of Lender as security for the Building Loan and encumbering the Property, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

**Building Note:** That certain Building Loan Promissory Note dated as of even date herewith in the maximum principal amount of Six Million Nine Hundred Eight Thousand Five Hundred and No/100 Dollars ($6,908,500.00), executed by Borrower and payable to the order of Lender, in evidence of the Building Loan, as the same may be amended, supplemented, restated, increased, extended, consolidated or otherwise modified from time to time.

**Budget**: As such term is defined in Section 5.1(q).

**Business Day**: Any day other than a Saturday, a Sunday or any other day on which national banks in New York, New York or in the city where the Servicer maintains its principal office are not open for business.

**Capital Adequacy Events**: As such term is defined in Section 3.6(c)(iv).

**Capital Budget**: As such term is defined in Section 5.1(q).

**Capital Expenditures:** With respect to the applicable measurement period, amounts expended for replacements and alterations to the Property (excluding tenant improvements) and required to be capitalized pursuant to an Approved Accounting Method.

**Cash Collateral Account**: As such term is defined in Section 3.3(f).

**Cash Collateral Funds**: As such term is defined in Section 3.3(f).

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

**Cash Trap Period**:  Initially, the period from the Closing Date until the date on which (x) the Project Yield, as determined by Lender, is equal to or greater than seven percent (7.0%) and (y) the Debt Service Coverage Ratio, as determined by Lender, is equal to or greater than 1.10:1.00.  Thereafter, the period which shall be deemed to (a) commence upon: (i) the occurrence of any Event of Default; (ii) the date on which Project Yield, as determined by Lender, has for a period of two (2) consecutive months been less than or equal to (x) prior to the Initial Maturity Date, seven percent (7.00%) and (y) thereafter, seven and one half percent (7.50%); (iii) the date on which the Debt Service Coverage Ratio, as determined by Lender, is for any month less than or equal to (x) prior to the Initial Maturity Date, 1.15:1.00 and (y) thereafter, 1.25:1.00; or (iv) the commencement of a Lease Sweep Period; and (b) have terminated, if ever, on such date as: (i) in the case of the foregoing clause (a)(i), Lender waives in writing the Event of Default giving rise to such Cash Trap Period and no other Event of Default has been continuing for sixty (60) days; (ii) in the case of the foregoing clause (a)(ii), Project Yield, as determined by Lender, is greater than or equal to (x) prior to the Initial Maturity Date, seven and twenty five one hundredths percent (7.25%), (y) thereafter, seven and seventy five one hundredths percent (7.75%); (iii) in the case of the foregoing clause (a)(iii), the Debt Service Coverage Ratio, as determined by Lender, has been greater than (a) prior to the Initial Maturity Date, 1.15:1.00 and (y) thereafter, 1.25:1.00, in all events for three (3) consecutive months; or (iv) in the case of the foregoing clause (a)(iv), such Lease Sweep Period has ended pursuant to the terms hereof (and no other Lease Sweep Period is then continuing).

**Casualty**:  The occurrence of any casualty, damage or injury, by fire or otherwise, to the Property or any part thereof.

**Casualty Consultant**:  As such term is defined in Section 9.3(b)(iii).

**Casualty Proceeds**:  As applicable, (i) the amount of all insurance proceeds payable as a result of a Casualty to the Property or any portion thereof, or (ii) the amount of the Award payable as a result of a Condemnation of the Property or any portion thereof.

**Casualty Retainage**:  As such term is defined in Section 9.3(b)(iv).

**Change Orders:**  All amendments or modification to the Project Plans, the Sworn Construction Cost Statements, the Project Budget, and/or the Construction Contract, in each case, approved by Lender in accordance with the terms of this Agreement.

**Closing Date**:  The date of the disbursement of the Initial Funding Amount.

**Code:**  The Internal Revenue Code of 1986, as amended and as it may be further amended from time to time and any successor statutes thereto, inclusive of applicable U.S. Department of Treasury regulations promulgated in temporary or final form.

**Collateral:**  All "collateral" as such term is defined in and covered by each of the Mortgage, any Deposit Account Control Agreement, or any other Loan Document and all accessions to, substitutions for, and replacements, products, and proceeds of any of the foregoing, including, but not limited to, proceeds of any insurance policies. claims against third parties, and condemnation or requisition payments with respect to all or any of the foregoing.

**Completion**:  As such term is defined in Section 5.1(h).

**Completion Date**:  As such term is defined in Section 5.1(h).

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

**Completion Guaranty:** That certain Agreement of Guaranty and Suretyship (Completion) of even date herewith, made by Principal in favor of Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Condemnation:** A temporary or permanent taking by any Governmental Authority as the result or in lieu or in anticipation of the exercise of the right of condemnation or eminent domain, of all or any part of the Property, or any interest therein or right accruing thereto, including any right of access thereto or any change of grade affecting the Property or any part thereof.

**Construction Contract:** That certain AIA Document A134-2009 Standard Form of Agreement between Owner and Construction Manager, dated as of July __, 2018 between Borrower and General Contractor for a contract sum equal to the actual Cost of Improvement plus General Contractor's fee in an amount equal to the greater of (i) six hundred fifty thousand dollars ($650,000) or (ii) four and one-half percent (4.5%) of all Trade Contractor Costs during the construction phases, for construction of the Project.

**Construction Documents:** The final plans and specifications for construction of the Project, the Project Budget, the Project Completion Schedule, the Construction Contract and any subcontracts (including all Major Contractors and Major Trade Contracts), and any and all architect's and engineer's agreements relating to the Project, all of which shall be in form and substance satisfactory to Lender, and all other documents and reports used in preparation for or in the actual construction of the improvements contemplated by the Project (all of which have been approved by Lender, to the extent in effect on and as of the Closing Date as the same have been provided to Lender prior to the date hereof).

**Contractor's Consent:** That certain General Contractor's Consent by and among Lender, Borrower, and Contractor.

**Control:** As such term is used with respect to any person or entity, including the correlative meanings of the terms "controlled by" and "under common control with," shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of such person or entity, whether through the ownership of voting securities, by contract or otherwise.

**Cost of Improvement:** As defined in Paragraph 5 of Section 2 of Article I of the Lien Law of the State of New York (as amended from time to time), as such term applies to the Project to be financed with the proceeds of the Building Loan.

**Cost Overruns:** As such term is defined in Section 3.4(b).

**Counterparty:** A third party issuer of an Interest Rate Agreement, Extended Interest Rate Agreement or Substitute Interest Rate Agreement for the benefit of Borrower, and which third party issuer shall be a financial institution having a credit rating not below the Minimum Rating, and shall otherwise be satisfactory to Lender.

**DBRS:** Dominion Bond Rating Service Ltd.

**Debt:** For any Person, without duplication: (i) all indebtedness of such Person for borrowed money, for amounts drawn under a letter of credit, or for the deferred purchase price of property for which such Person or its assets is liable, (ii) all unfunded amounts under a loan agreement, letter of credit, or other credit facility for which such Person would be liable if such amounts were advanced thereunder, (iii) all amounts required to be paid by such Person as a guaranteed payment to partners or a preferred or special dividend, including any mandatory redemption of shares or interests, (iv) all indebtedness guaranteed by such Person, directly or indirectly, (v) all obligations under leases that constitute capital leases for which

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM          INDEX NO. 655493/2021
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 09/15/2021

such Person is liable, and (vi) all obligations of such Person under interest rate swaps, caps, floors, collars and other interest hedge agreements, in each case whether such Person is liable contingently or otherwise, as obligor, guarantor or otherwise, or in respect of which obligations such Person otherwise assures a creditor against loss.

**Debt Service Coverage Ratio**: The ratio of (a) Net Operating Income to (b) Deemed Debt Service, as determined by Lender in its sole good faith discretion.

**Deemed Debt Service**: With respect to any period of time, the Monthly Interest Payment payable under this Agreement, the Note and the other Loan Documents during such period, using for the interest calculation the product of (i) the interest rate in effect as of the date of determination, multiplied by (ii) the then-outstanding principal balance of the Loan.

**Debt Yield**: As of any date of determination, the percentage obtained by dividing:

(a)      Net Operating Income (excluding interest on credit accounts) for the immediately preceding twelve (12) full calendar month period, by

(b)      the then outstanding principal balance of the Loan.

**Default or default**: Any event, circumstance or condition, which, if it were to continue uncured, would, with notice or lapse of time or both, constitute an Event of Default hereunder.

**Default Rate**: A rate per annum equal to the lesser of (i) the Maximum Legal Rate or (ii) five percent (5.0%) above the Applicable Interest Rate.

**Deposit Account**: The deposit account established by Borrower at the Deposit Bank into which all amounts received by Borrower constituting Rents or other Gross Revenue shall be deposited.

**Deposit Account Control Agreement**: That certain Deposit Account Control Agreement with respect to the Deposit Account by and among Borrower, Deposit Bank and Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Deposit Bank**: The bank or banks approved by Lender to maintain the Deposit Account, which shall be an Eligible Institution, and any successor Eligible Institution thereto.

**Disbursement Processing Fee**: As such term is defined in <u>Section 3.1</u>.

**Disclosure Document**: As such term is defined in <u>Section 12.2(a)</u>.

**Eligible Institution**: A depository institution insured by the Federal Deposit Insurance Corporation the short term unsecured debt obligations or commercial paper of which are rated at least A-1 by S&P, P-1 by Moody's, and F-1+ by Fitch in the case of accounts in which funds are held for thirty (30) days or less or, in the case of Letters of Credit or accounts in which funds are held for more than thirty (30) days, the long term unsecured debt obligations of which are rated at least "**AA**" by Fitch and S&P and "**Aa2**" by Moody's.

**Environmental Documents**: As such term is defined in <u>Section 8.1</u>.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

**Environmental Indemnity Agreement**:  That certain Environmental Indemnity Agreement of even date herewith made by Borrower and Principal in favor of Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Environmental Obligations**:  As such term is defined in Section 8.7.

**Environmental Proceedings**:  Any environmental proceedings, whether civil (including actions by private parties), criminal, or administrative proceedings, relating to the Property.

**Environmental Reports**:  As such term is defined in Section 8.3.

**ERISA**:  The Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder from time to time.

**Event of Default**:  As such term is defined in Section 10.1.

**Excluded Taxes**:  With respect to Lender or any other recipient of any payment to be made by or on account of any obligation of Borrower hereunder, (i) income or franchise taxes imposed on (or measured by) its net income by the United States of America, or by the jurisdiction under the laws of which such recipient is organized or in which its principal office is located or, in the case of Lender, in which its Applicable Lending Office is located, and (ii) any branch profits taxes imposed by the United States of America or any similar law imposed by any other jurisdiction in which Borrower is located.

**Expenses**:  All losses, fines, penalties, judgments, awards, costs and expenses (including, without limitation, reasonable attorneys' fees and costs, the allocated costs for services of in-house counsel, and expenses of investigation).

**Extended Interest Rate Agreement**:  An interest rate protection agreement between Borrower and the Counterparty having the same notional amount as the Interest Rate Agreement and a strike price that results in a Debt Service Coverage Ratio of not less than 1.20:1.00 as determined by Lender, for the term commencing not later than the date on which the Interest Rate Agreement expires and continuing through a date not earlier than the Initial Maturity Date, the terms and provisions of which shall be satisfactory to Lender.  The costs of obtaining the Extended Interest Rate Agreement shall be borne by Borrower from its own sources.

**FIRREA**:  The Financial Institutions Reform, Recovery And Enforcement Act of 1989, as amended from time to time.

**First Extended Maturity Date**:  July 10, 2023 or any earlier date on which the Loan shall be required to be paid in full, whether by acceleration or otherwise.

**First Extension Option**:  As such term is defined in Section 3.4.

**Fitch**:  Fitch, Inc.

**Force Majeure Events**:  As such term is defined in Section 5.2(i).

**Free Rent Reserve**:  As such term is defined in Section 3.3(e)(iv).

**Funding Losses**:  As such term is defined in Section 3.5(c)(i).

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021
NYSCEF DOC. NO. 2                                     RECEIVED NYSCEF: 09/15/2021

**Funding Party**: Any bank or other entity, if any, which is indirectly or directly funding Lender with respect to the Loan, in whole or in part, including, without limitation, any direct or indirect assignee of, or participant in, the Loan.

**Funds**: As such term is defined in <u>Section 5.3(g)</u>.

**GAAP**: Those generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board (or agencies with similar functions of comparable stature and authority within the accounting profession), or in such other statements by such entity as may be in general use by significant segments of the U.S. accounting profession.

**General Contractor:** NY Developers & Management LLC.

**Governmental Approvals**: Collectively, all consents, licenses, and permits and all other authorizations or approvals required from any Governmental Authority to construct, improve, renovate or operate the Property.

**Governmental Authority**: Any federal, state, county or municipal government, or political subdivision thereof, any governmental or quasi-governmental agency, authority, board, bureau, commission, department, instrumentality, or public body, or any court, administrative tribunal, or public utility.

**Gross Revenue**: All revenue derived from the ownership and operation of the Property from whatever source, based on the most current month's annualized rent roll (annualized assuming twelve (12) month lease reimbursements as calculated per the Leases, including, but not limited to, Rents, but <u>excluding</u> sales, use and occupancy or other taxes on receipts required to be accounted for by Borrower to any Governmental Authority, security deposits (except to the extent such security deposits are properly utilized to offset a loss of Rent), and uncollectible accounts, proceeds of casualty insurance (other than business interruption or other loss of income insurance related to business interruption or loss of income for the period in question), Awards, any disbursements to Borrower of funds from any Holdback, and any disbursements to Borrower of the Funds.

**Gross Square Feet:** The aggregate total gross number of square feet of floor area of the Improvements, including without limitation all space that is occupied or able to be occupied and all common areas, building core and other areas of the Improvements that may be used for maintenance and operations.

**Gross-up Amounts**. As such term is defined in <u>Section 3.6(f)</u>.

**Guaranty of Recourse Obligations**: That certain Guaranty of Recourse Obligations of even date herewith made by Principal in favor of Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Hazardous Materials:** Means and includes petroleum and petroleum products (excluding a small quantity of gasoline used in maintenance equipment on the Property in compliance with all applicable Laws), explosives, radioactive materials, polychlorinated biphenyls, asbestos in any form, any microbial matter, biological toxins, mycotoxins, mold or mold spores, paint with more than 0.5 percent lead by dry weight, hazardous waste, toxic or hazardous substances or other related materials whether in the form of a chemical, element, compound, solution, mixture or otherwise including, but not limited to, those materials defined or regulated as "hazardous substances," "pollutant or contaminant," "extremely hazardous

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

substances," "hazardous chemicals," "hazardous materials," "toxic substances," "toxic chemicals," "air pollutants," "toxic pollutants," "hazardous wastes," "extremely hazardous waste," or "restricted hazardous waste" or any other hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such under any Law of any Governmental Authority having jurisdiction over the Borrower, Principal, the Property or any portion thereof or its use.

**Improvements**:  All improvements to the Property, whether currently existing, contemplated by the Project, performed following an event of Casualty or Condemnation, or otherwise.

**Include or including**:  Including, but not limited to.

**Indebtedness**:  The outstanding principal amount of the Loan together with all interest accrued and unpaid thereon and all other sums (including, without limitation, any amounts payable to Lender pursuant to Section 3.6) due to Lender in respect of the Loan under this Agreement, the Note, the Mortgage, or any other Loan Document.

**Indemnified Liabilities**:  As such term is defined in Section 5.2(m).

**Indemnified Party**:  As such term is defined in Section 5.2(m).

**Independent Director**:  As such term is defined in Section 7.1(q).

**Independent Manager**:  As such term is defined in Section 7.1(r).

**Initial Equity Contribution**:  A portion of Borrower's Equity Contribution in the amount of $14,033,132.00 invested by Borrower in the Property prior to the Closing Date.

**Initial Funding Amount**:  As such term is defined in Section 3.1.

**Initial Maturity Date:**  June 10, 2022 or any earlier date on which the Loan shall be required to be paid in full, whether by acceleration or otherwise.

**Insolvency Opinion**:  A bankruptcy nonconsolidation opinion letter given in connection with the Loan on a form reasonably approved by the Lender and prepared by an attorney reasonably approved by Lender.

**Insurance Premium Funds**:  As such term is defined in Section 5.2(f)(iii).

**Insurance Premiums:**  As such term is defined in Section 5.2(f)(iii).

**Intercreditor Agreement:**  shall mean that certain Intercreditor, Subordination and Standstill Agreement of even date herewith by and between Lender and Mezzanine Lender.

**Interest Period**:  With respect to any Monthly Payment Date, the period commencing on the eleventh (11th) day of the preceding calendar month and terminating on the tenth (10th) day of the calendar month in which such Monthly Payment Date occurs; provided, however, that no Interest Period shall end later than the Maturity Date (other than for purposes of calculating interest at the Default Rate), and the initial Interest Period shall begin on the Closing Date and shall end on June 10, 2019.

**Interest Rate Agreement**:  An interest rate protection agreement (including any ISDA Master Agreement) between Borrower and the Counterparty, having a notional amount of not less than $52,000,000.00, which shall have the effect of capping the LIBOR Rate at no greater than four percent

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM          INDEX NO. 655493/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 09/15/2021

(4.0%) for a term expiring not earlier than July 10, 2021, the terms and provisions of which shall be reasonably satisfactory to Lender. The costs of obtaining the Interest Rate Agreement shall be borne by Borrower.

**Internal Revenue Code**: The Internal Revenue Code of 1986, as amended from time to time.

**Kroll**: Kroll Bond Rating Agency, Inc.

**Land**: As such term is defined in Recital A.

**Late Charge**: An amount equal to five percent (5%) of each delinquent payment, delinquent Monthly Interest Payment, and all other delinquent payments due under the Loan.

**Laws**: Collectively, all federal, state and local laws, statutes, codes, ordinances, orders, rules and regulations, including judicial opinions or presidential authority in the applicable jurisdiction, including, without limitation, the Americans with Disabilities Act of 1990 and all Laws relating to protection of human health, the environment or Hazardous Materials.

**Leases**: The collective reference to all leases, subleases and occupancy agreements affecting the Property or any part thereof now existing or hereafter executed and all amendments, modifications or supplements thereto approved in writing by Lender.

**Legal Requirements**: All Laws, all permits, licenses and authorizations relating thereto, and all covenants, agreements, restrictions and encumbrances contained in any instruments, either of record or known to Borrower, at any time in force affecting the Property or any part thereof, including any which may (i) require repairs, modifications or alterations in or to the Property or any part thereof, or (ii) in any way limit the use and enjoyment thereof.

**Lender**: As defined in the opening paragraph of this Agreement, and including any successor holder of the Loan from time to time.

**Lender's Consultant**: An independent consulting architect, inspector, and/or engineer designated by Lender in Lender's sole discretion.

**LIBOR Loan**: The Loan at any time in which the Applicable Interest Rate is calculated at the LIBOR Rate plus the LIBOR Spread.

**LIBOR Rate**: With respect to any Interest Period, the rate (expressed as a percentage per annum and rounded upward, if necessary, to the next nearest one-eighth of one percent (0.125%)) reported as of 11:00 a.m., London time on the LIBOR Rate Determination Date on Dow Jones Telerate Service Page 3750 (British Bankers Association Settlement Rate) as the non-reserve adjusted London Interbank Offered Rate for U.S. dollar deposits having a thirty (30) day term and in an amount of One Million and No/100 Dollars (US$1,000,000.00) or more (or on such other page as may replace said Page 3750 on that service or such other service or services as may be nominated by the British Bankers Association for the purpose of displaying such rate, all as determined by Lender in its sole but good faith discretion). In the event that (i) more than one such LIBOR Rate is provided, the average of such rates shall apply, or (ii) no such LIBOR Rate is published, then the LIBOR Rate shall be determined from such comparable financial reporting company as Lender in its sole but good faith discretion shall determine. The LIBOR Rate for any Interest Period shall be adjusted from time to time by increasing the rate thereof to compensate Lender and any Funding Party for any aggregate reserve requirements (including, without limitation, all basic, supplemental, marginal and other reserve requirements and taking into account any transitional adjustments

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

or other scheduled changes in reserve requirements during any Interest Period) which are required to be maintained by Lender or such Funding Party with respect to "Eurocurrency Liabilities" (as presently defined in Regulation D of the Board of Governors of the Federal Reserve System) of the same term under Regulation D, or any other regulations of a Governmental Authority having jurisdiction over Lender or such Funding Party of similar effect. The LIBOR Rate, absent manifest error, shall be determined conclusively by Lender or its agent. Notwithstanding anything to the contrary contained herein, in no event shall the LIBOR Rate be less than two and twenty five one-hundredths percent (2.25%) per annum (or the daily equivalent thereof).

**LIBOR Rate Determination Date**:  With respect to any Interest Period, the date that is two (2) London Business Days prior to the eleventh (11th) day of the calendar month in which such Interest Period commences; provided that with respect to the initial Interest Period the LIBOR Rate Determination Date shall be the Closing Date.

**LIBOR Spread**:  Four and seventy one hundredths percent (4.70%) through and including the Completion Date; and thereafter, three and sixty one hundredths percent (3.60%).

**Liquid Assets**:  Assets in the form of cash, cash equivalents, obligations of (or fully guaranteed as to principal and interest by) the United States or any agency or instrumentality thereof (provided the full faith and credit of the United States supports such obligation or guarantee), certificates of deposit issued by a commercial bank having net assets of not less than $500,000,000, securities listed and traded on a recognized stock exchange or traded over the counter and listed in the National Association of Securities Dealers Automatic Quotations, or liquid debt instruments that have a readily ascertainable value and are regularly traded in a recognized financial market, that in each case are owned free and clear of all liens, claims, encumbrances and rights of others.

**Loan**:  Collectively, the Senior Loan, the Building Loan, and the Project Loan.

**Loan Agreement:**  Individually or collectively, the Project Loan Agreement, the Senior Loan Agreement, the Building Loan Agreement, or any of them, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

**Loan Disbursements**:  The aggregate of all disbursements arising under or in connection with the Loan. All Loan Disbursements made after the Closing Date shall be considered to have been made on the actual dates of the disbursement thereof.

**Loan Documents**:  The collective reference to this Agreement, the Project Note, the Project Loan Mortgage, the Senior Loan Agreement, the Senior Note, the Senior Loan Mortgage, the Building Loan Agreement, the Building Note, the Building Loan Mortgage, the Assignment of Contracts, the Assignment of Construction Contracts, the Assignment of Management Agreement, each Assignment of Interest Rate Agreement, the Environmental Indemnity Agreement, the Completion Guaranty, the Guaranty of Recourse Obligations, the Deposit Account Control Agreement and all the other documents and instruments entered into from time to time, evidencing or securing the Loan or any obligation of payment thereof or performance of Borrower's or Principal's obligations in connection with the transaction contemplated hereunder, each as amended, restated, replaced, supplemented or otherwise modified from time to time.

**Loan Origination Fee**:  A loan origination fee in the amount of $520,000.00 due and payable to Lender, which loan origination fee shall be nonrefundable, shall be deemed fully earned by Lender on the Closing Date and shall be paid from the proceeds of the Loan.

{01535670;3}    - 13 -

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

**Loss Factor:** The percentage of the building's area shared by tenants. The loss factor takes into consideration the building's lobby, elevators, stairwells, shafts, and mechanical areas but is not bound by the actual physical features of the building.

**Major Contractor:** Any contractor performing work at the Property, supplying labor or materials, or both, in connection with the performance of Improvements which is for an aggregate contract price equal to or greater than $100,000.00, whether pursuant to one contract or agreement or multiple contracts or agreements, after taking into account all change orders.

**Major Lease:** Any Lease (and expansions, renewals or modifications of any Leases, and any cancellation or termination of any such Leases) of all or any part of the Property and Improvements which: (i) demises any space at the Property, which, either individually, or when taken together with any other Lease with the same Tenant or its Affiliates, and assuming the exercise of all expansion rights and all preferential rights to lease additional space contained in such Lease demises space in excess of 5,000 rentable square feet, (ii) provides for less than Lender's underwritten rental rates of $275 per rentable square foot on a triple-net basis or (b) $325 per rentable square foot on a modified gross basis for the retail space (blended across the Ground Floor and Lower Level) and (a) $65 per rentable square foot on a triple-net basis or (b) $75 per rentable square foot on a modified gross bases for the office space, (iii) provides for a term (including all extension options) in excess of ten (10) years or less than three (3) years, (iv) demises any space at the Property, other than for traditional retail or office use, (v) contains an option or other preferential right to purchase all or any portion of the Property, (vi) is with an Affiliate of Borrower as Tenant, (vii) is entered into during the continuance of an Event of Default, (viii) contains a right or option in favor of the Tenant to terminate such Lease, or (ix) provides for tenant improvements and/or leasing commission allowances greater than market standard levels, all as determined by Lender.

**Major Trade Contracts:** Any contract with a Major Contractor.

**Management Agreement:** Any management agreement entered into by Borrower in accordance with Section 5.1(b) and on terms and with a Property Manager approved by Lender in its sole but reasonable discretion, pursuant to which such Property Manager is to provide management and other services with respect to the Property.

**Managing Member:** 257-263 W34th SPE LLC a Delaware limited liability company, as the sole managing member of Borrower.

**Material Adverse Change or material adverse change:** If, in Lender's reasonable discretion, the business prospects, operations or financial condition of a person, entity or property has changed in a manner which would likely impair the value of Lender's security for the Loan, prevent timely repayment of the Loan or otherwise prevent the applicable person or entity from timely performing any of its material obligations under the Loan Documents.

**Maturity Date:** The Initial Maturity Date, or, if Borrower satisfies the conditions to extend the term of the Loan pursuant to Section 3.4, the First Extended Maturity Date or Second Extended Maturity Date, as applicable.

**Maximum Legal Rate:** The maximum non-usurious interest rate. if any. that at any time or from time to time may be contracted for, taken, reserved, charged or received on the indebtedness evidenced by the Note and as provided for herein or the other Loan Documents, under the laws of such state or states whose laws are held by any court of competent jurisdiction to govern the interest rate provisions of the Loan.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

**Mezzanine Borrower**: 257-263 W 34th Mezz, LLC, a New York limited liability company, an Affiliate of Borrower, together with its successors and assigns.

**Mezzanine Lender**: Churchill Real Estate Holdings LLC, a New York limited liability company, an Affiliate of Borrower, together with its successors and assigns.

**Mezzanine Loan**: That certain mezzanine loan in the original principal amount of $20,000,000.00 made by Mezzanine Lender to Mezzanine Borrower pursuant to the terms and conditions of the Mezzanine Loan Agreement.

**Mezzanine Loan Agreement**: That certain Mezzanine Loan Agreement dated as of June 7, 2018, between Mezzanine Borrower and Mezzanine Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, subject to the terms and conditions of the Intercreditor Agreement.

**Mezzanine Loan Documents**: The Mezzanine Loan Agreement, the Mezzanine Note, the Mezzanine Omnibus Amendment and all other documents or instruments evidencing, securing or guaranteeing the Mezzanine Loan executed and delivered by Mezzanine Borrower, in connection with the Mezzanine Loan, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, subject to the terms and conditions of the Intercreditor Agreement.

**Mezzanine Note**: That certain Mezzanine Promissory Note dated as of June 7, 2018, made by Mezzanine Borrower to Mezzanine Lender, in the original principal amount of the Mezzanine Loan, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, subject to the terms and conditions of the Intercreditor Agreement.

**Mezzanine Omnibus Amendment**: That certain Loan Modification Agreement, dated as of even date herewith, between Mezzanine Borrower and Mezzanine Lender, in connection with the Mezzanine Loan.

**Minimum Disbursement Amount:** With respect to Building Loan Funds, Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00), except for the final disbursement.

**Minimum Interest Payment**: Upon repayment of the Loan in full (whether on the Maturity Date or on any other date) or upon the acceleration of the Loan by Lender as provided herein, the amount, if any, by which the aggregate amount of interest that would have accrued and been payable during the period from the Closing Date through the date which is the tenth (10th) day of the twelfth (12th) calendar month following the Closing Date (calculated based on the outstanding principal balance of the Loan) exceeds the aggregate amount of interest actually paid by Borrower to Lender prior to and concurrently with such repayment or acceleration; provided, however any Default Rate portion of interest paid by Borrower prior to or concurrently with any repayment or acceleration shall not be included or taken into account for purposes of calculating the Minimum Interest Payment. The amount of the Minimum Interest Payment shall be calculated at the time of repayment or acceleration of the Loan based on the LIBOR Spread being deemed to be 3.60% through the later to occur of the Completion Date and the date of Borrower's receipt of a temporary certificate of occupancy for the Improvements.

**Minimum Rating**: A minimum credit rating of A (S&P) or A3 (Moody's).

**Monthly Interest Payment**: Monthly payments of interest due and payable on the outstanding principal balance of the Loan in arrears at the Interest Rate.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

**Monthly Payment Date**:  The eleventh (11th) day of every calendar month occurring during the term of the Loan or, if such day is not a Business Day, the immediately preceding Business Day.

**Moody's**:  Moody's Investors Service, Inc.

**Morningstar**:  Morningstar Credit Ratings LLC.

**Mortgage**:  The Project Loan Mortgage, Assignment of Rents, and Security Agreement, effective as of the date hereof, executed and delivered by Borrower for the benefit of Lender as security for the Project Loan and encumbering the Property, the Senior Loan Mortgage, Assignment of Rents, and Security Agreement, effective as of the date hereof, executed and delivered by Borrower for the benefit of Lender as security for the Senior Loan and encumbering the Property, the Building Loan Mortgage, Assignment of Rents, and Security Agreement, effective as of the date hereof, executed and delivered by Borrower for the benefit of Lender as security for the Building Loan and encumbering the Property, or any of them, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

**Net Cash Flow**:  For any period means, all revenues of Borrower, determined on a cash basis, derived from the ownership, operation, use, leasing and occupancy of the Property during such period based on the most current month's annualized rent roll (annualized assuming twelve (12) months lease reimbursements as calculated per the Leases less the actual, customary and reasonable expenses actually paid in connection with operating the Property paid during such period (including a management fee not to exceed three percent (3.0%) of effective gross income), and deposits made into reserves approved by Lender or required by the Loan Documents (provided, however, that amounts included in such reserves shall not also be included as an expense upon disbursement from such reserves) excluding: (A) any loan proceeds; (B) proceeds or payments under insurance policies (but including proceeds of business interruption insurance); (C) condemnation proceeds; (D) any security deposits received from tenants in the Property, unless and until the same are applied to rent or other obligations in accordance with the tenant's Lease; and (E) any other extraordinary items approved by Lender, in its sole but reasonable discretion, and (f) any free rent periods for purposes of calculating Excess Cash Flow.

**Net Casualty Proceeds**:  All Casualty Proceeds or any portion thereof, after deduction of reasonable costs and expenses (including, but not limited to, reasonable attorneys' fees), if any, in collecting such Casualty Proceeds.

**Net Casualty Proceeds Deficiency**:  As such term is defined in Section 9.3(b)(vi).

**Net Operating Income**:  Adjusted Actual Rent less Operating Expenses for the immediately prior twelve (12) month period.  For purposes of determining Net Operating Income, the calculation of Adjusted Actual Rent shall be based on a vacancy factor equal to the greatest of (a) actual vacancy in the Property, (b) the market vacancy rate for mixed use properties similar to the Property located in the vicinity of the Property and (c) an assumed five percent (5.0%) vacancy rate.

**Note**:  Collectively, the Project Note, the Senior Note, the Building Note, or any of them, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

**Notice**:  As such term is defined in Section 13.27.

**Occupancy Conditions**: shall mean the delivery by Borrower to Lender of evidence reasonably satisfactory to Lender (including an estoppel certificate executed by the relevant Tenant(s)) that (A) the entire subject Lease Sweep Space is tenanted under one or more Qualified Leases, (B) each such Tenant has taken occupancy of the entire space demised to such Tenant, (C) all contingencies under all such

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

Lease(s) to the effectiveness of the Lease(s) have been satisfied, (D) all leasing commissions payable in connection with any such Lease have been paid and all tenant improvement obligations or other landlord obligations of an inducement nature have either been completed or paid in full or, alternatively, sufficient funds will be retained in the Lease Sweep Account for such purposes (the "**Unpaid TILC Obligation Amount**"), (E) such Tenant has actually commenced paying full contractual rent under the applicable Lease and any initial free rent period or period of partial rent abatements has expired or, alternatively, sufficient funds will be retained in the Lease Sweep Account to account for all remaining scheduled free rent periods or rent abatements (the "**Remaining Rent Abatement Amount**" and, collectively with the Unpaid TILC Obligation Amount, the "**Unpaid Landlord Obligations Amount**") and (F) the rent commencement date under all such Lease(s) has been set.

**OFAC List**:  As such term is defined in Section 5.2(s).

**OFAC Rules**:  As such term is defined in Section 5.2(s).

**Obligations:**  Collectively, (i) Borrower's obligations for the payment of the Debt; (ii) the performance of all other obligations of Borrower contained herein; (iii) the performance of each obligation of Borrower contained in any other Loan Document; and (iv) the performance of each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, or any change, substitution, or replacement under any part of this Agreement, any Note evidencing the Loan, or any other Loan Document.

**Office Premises:**  Floors two (2) through six (6) at the Property totaling 26,680 rentable square feet with floor-plates of (i) 3,888 gross square feet, (ii) 3,895 usable square feet and (iii) 5,336 rentable square feet. For the avoidance of doubt, the difference between the rentable square feet and usable square feet is associates with a Loss Factor of 37%.

**Operating Budget**: As such term is defined in Section 5.1(q).

**Operating Expenses**:  For any period, all costs and expenses relating to the operation, maintenance and management of the Property, including, without limitation, utilities, repairs and maintenance, Insurance Premiums, Taxes and Other Charges, advertising expenses, payroll and related taxes, equipment lease payments, a management fee equal to three percent (3.0%) of annual Gross Revenue, and deposits made into reserves approved by Lender or required by the Loan Documents; provided, however, that amounts included in such reserves shall not also be included as an expense upon disbursement therefrom, but excluding actual capital expenditures, debt service, depreciation, amortization and contributions to the Funds.  For purposes of calculating Project Yield, (i) Operating Expenses shall be based on the trailing twelve (12) months expense (as adjusted by Lender to ensure a full twelve (12) months of expenses are represented), (ii) real estate taxes shall be based on the most current real estate tax bill and adjusted by Lender to ensure any proposed increases are taken into account, and (iii) Insurance Premiums shall be based on the premiums required to insure the Property in accordance with Lender's requirements.

**Organizational Documents**:  As to any Person, its certificate of formation, articles of organization and operating agreement, its partnership agreement and certificate of limited partnership or doing business certificate, its articles or certificate of incorporation and by-laws, trust and/or the other organizational or governing documents, as applicable, of such Person.  Organizational Documents of a Person shall include, to the extent applicable, incumbency certificates, resolutions, certificates of good standing and consents of members, partners or shareholders, as applicable.

**Other Charges**:  All ground rents, maintenance charges, impositions other than Taxes, any common expenses and any other charges, including, without limitation, vault charges and license fees for

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

the use of vaults, chutes and similar areas adjoining the Property, now or hereafter levied or assessed or imposed against the Property or any part thereof.

**Outstanding Principal Balance:** The principal balance remaining unpaid under any Note or all of them, from time to time.

**Patriot Act:** As such term is defined in Section 5.2(s).

**Percentage**: Individually or collectively, Borrower's Percentage and Lender's Percentage.

**Permitted Exceptions**: Those matters listed on Schedule B-I to the Title Policy which affect title to the Property as of the closing and thereafter such other title exceptions as Lender may reasonably approve in writing.

**Person**: Any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other entity, any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

**Personal Property:** As such term is defined in Section 5.2(i).

**Policy and Policies**: As such terms are defined in Section 9.1(a)(ii).

**Principal**: Individually or collectively as the context may require, each of Sorabh Maheshwari, a natural person, Justin Ehrlich, a natural person, Chaim Lebowitz, a natural person and Isaac Laufer, a natural person.

**Prohibited Person(s)**: As such term is defined in Section 5.2(s).

**Project:** The repairs, renovations and other capital improvements to be made to the Property, as more particularly described on Exhibit B attached hereto.

**Project Budget:** As such term is defined in Section 3.3(b) of the Project Loan Agreement.

**Project Completion Schedule:** As such term is defined in Section 5.1(g).

**Project Costs:** Costs incurred in the performance of improvement to the Property pursuant to the Project.

**Project Loan Funds:** As such term is defined at Section 3.3(b) of the Project Loan Agreement.

**Project Note:** That certain Project Loan Promissory Note dated of even date herewith, in the maximum principal amount of Four Million Nine Hundred Ninety Five Thousand and No/100 Dollars ($4,995,000.00) executed by Borrower and payable to the order of Lender in evidence of the Senior Loan, as the same may be amended, supplemented, restated, increased, extended, consolidated, or otherwise modified from time to time.

**Project Plans:** The final plans and specifications relating to the Project, including all schematic and working drawings and designations of all manufacturers and model numbers of all equipment, as approved by all necessary parties in accordance with this Agreement, as the same may be amended from time to time in accordance with this Agreement.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

**Project Yield**:  The quotient of (i) Net Operating Income from the Property as determined by Lender's audit, at Borrower's expense, at such time, divided by (ii) the sum of the then current outstanding principal balance of the Loan plus any anticipated future fundings on the Loan plus accrued and unpaid interest thereon.

**Property**:  The collective reference to (i) the Land, together with all buildings, structures and improvements located or to be located thereon, including the Improvements, (ii) all rights, privileges, easements and hereditaments relating or appertaining thereto, and (iii) the Personal Property.

**Property Manager**:  A reputable and experienced management organization (which may be an Affiliate of Borrower) possessing experience in managing properties similar in size, scope, use and value as the Property, reasonably approved by Lender, provided that if the Loan has been included in a Securitization, Borrower shall have obtained prior written confirmation from the applicable Rating Agencies that management of the Property by such Person will not cause a downgrade, withdrawal or qualification of the then current ratings of the Securities or any class thereof.  The initial Property Manager shall be CCM Property Manager LLC, a New York limited liability company.

**Provided Information**:  Any and all financial and other information provided at any time by, or on behalf of, Borrower with respect to the Property, Borrower, any Principal, Managing Member and/or Manager.

**Qualified Lease**: means either: (A) the original Lease Sweep Lease, as extended in accordance with (i) the express renewal option set forth in such Lease Sweep Lease and, with respect to which, the terms of such renewal are on market terms with respect to, among other things, base rent, additional rent and recoveries and tenant improvement allowances or (ii) a modification of the Lease Sweep Lease reasonably approved by Lender, or (B) a replacement lease (i) with an initial term of at least three (3) years; (ii) entered into in accordance with this Agreement and (iii) on market terms with respect to, among other things, base rent, additional rent and recoveries and tenant improvement allowances.

**Rating Agencies**:  Shall mean each of S&P, Moody's, Fitch, Kroll, DBRS and Morningstar or any other nationally recognized statistical rating agency (and any successor to any of the foregoing) which has been designated by or has been or will be engaged by Lender or its designees in connection with, or in anticipation of, Secondary Market Transaction.

**Remaining Parcel** or **Remaining Parcels**: As such term is defined in Section 13.29(e).

**Remedial Work**:  As such term is defined in Section 8.4.

**Rentable Square Feet:** The number of square feet of space that Tenants pay rent for.

**Rents**:  All rents, rent equivalents, moneys payable as damages (including payments by reason of the rejection of a Lease in a Bankruptcy Action) or in lieu of rent or rent equivalents, royalties (including all oil and gas or other mineral royalties and bonuses), income, receivables, receipts, revenues, deposits that are not the property of Tenants except for Borrower's rights therein (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payments and consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower or its agents or employees from any and all sources arising from or attributable to the Property.

**Restoration**:  The repair and restoration of the Property after a Casualty or Condemnation as nearly as possible to the condition the Property was in immediately prior to such Casualty or Condemnation, and otherwise in accordance with Section 9.3.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

**Restoration Threshold**: $1,000,000.00.

**Retail Premises:** The (a) ground floor retail space totaling (i) 7,903 gross square feet, (ii) 6,699 usable square feet or (iii) 6,699 rentable square feet and (b) the lower level retail space totaling (i) 7,768 gross square feet, (ii) 5,334 usable square feet or (iii) 5,334 rentable square feet.

**S&P**: Standard & Poor's Ratings Group, a division of the McGraw-Hill Companies.

**Second Extended Maturity Date**: July 10, 2024 or any earlier date on which the Loan shall be required to be paid in full, whether by acceleration or otherwise.

**Second Extension Option**: As such term is defined in Section 3.5.

**Secondary Market Transactions**: As such term is defined in Section 12.1(a).

**Securities**: As such term is defined in Section 12.1(a).

**Securitization**: As such term is defined in Section 12.1(a).

**Senior Loan**: The loan in the maximum principal amount of Forty Million Ninety-Six Thousand Five Hundred and No/100 Dollars ($40,096,500.00), made by Lender in favor of Borrower pursuant to the Senior Loan Agreement.

**Senior Loan Agreement:** That certain Senior Loan Agreement of even date herewith, between Borrower and Lender, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

**Senior Mortgage:** That certain Senior Loan Mortgage Consolidation, Modification and Extension Agreement effective of even date herewith, executed and delivered by Borrower for the benefit of Lender, as security for the Senior Loan and encumbering the Property, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Senior Note:** That certain Senior Loan Promissory Note dated of even date herewith, in the maximum principal amount of Forty Million Ninety-Six Thousand Five Hundred and No/100 Dollars ($40,096,500.00) executed by Borrower and payable to the order of Lender in evidence of the Senior Loan, as the same may be amended, supplemented, restated, increased, extended, consolidated, or otherwise modified from time to time.

**Servicer**: As such term is defined in Section 13.21.

**Servicing Agreement**: As such term is defined in Section 13.21.

**Severed Loan Documents**: As such term is defined in Section 10.2(c).

**SPC Party**: As such term is defined in Section 7.1(o).

**Substitute Interest Rate Agreement**: As such term is defined in Section 5.2(v).

**Sworn Construction Cost Statement:** An itemized, certified statement of the actual and estimated costs of the Project, signed and sworn to by Borrower, General Contractor and Architect, as the same may be amended or supplemented with the approval of Lender from time to time, consistent with the items enumerated in the Project Budget.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM INDEX NO. 655493/2021

NYSCEF DOC. NO. 2                                                           RECEIVED NYSCEF: 09/15/2021

**Tax Funds**: As such term is defined in <u>Section 5.2(f)(i)</u>.

**Taxes**: All real estate and personal property taxes, assessments, water rates or sewer rents, now or hereafter levied or assessed or imposed against the Land or part thereof, together with all interest and penalties thereon.

**TDRs**: As such term is defined in <u>Section 13.29</u>.

**TDRs Transferee**: As such term is defined in <u>Section 13.29(c)</u>.

**Tenant**: Any tenant under any Lease.

**Tenant Direction Letter**: A letter to each Tenant under a Lease instructing such Tenant to deliver all Rents directly to the Deposit Account, which letter shall be substantively identical to the form letter attached hereto as <u>Exhibit F</u>.

**Tenant Improvement**: Tenant improvement costs associated with the leasing of space at the Property, to the extent the same are Approved Leasing Expenses.

**Tenant Improvement and Leasing Commission Holdback**: As such term is defined in <u>Section 3.4(a)</u> of the Building Loan Agreement.

**Term Sheet**: As such term is defined in <u>Section 3.2(a)</u>.

**Title Insurer**: Fidelity National Title Insurance Company of New York, or such other title insurance company licensed in the State of New York as may be approved in writing by Lender in Lender's sole discretion.

**Title Policy**: An ALTA Mortgagee's Loan Title Insurance Policy with extended coverage issued by the Title Insurer insuring the lien of the Mortgage as a valid second lien upon the Property and all appurtenant easements, and subject to no other exceptions other than the Permitted Exceptions and otherwise satisfying the requirements of Lender.

**Transfer**: Except as otherwise permitted hereunder or approved by Lender, any (i) sale, transfer, lease, conveyance, alienation, pledge, assignment, mortgage, encumbrance hypothecation or other disposition of (a) all or any portion of the Property or any portion of any other security for the Loan, (b) all or any portion of Borrower's right, title and interest (legal or equitable) in and to the Property or any portion of any other security for the Loan, or (c) any interest in Borrower (including any interest in the profits, losses or cash distributions in any way relating to the Property or Borrower) or any interest in any entity which holds an interest in, or directly or indirectly controls, Borrower or (ii) creation of any new ownership interest in Borrower (including any interest in the profits, losses or cash distributions in any way relating to the Property or Borrower).

**UCC**: The Uniform Commercial Code as the same may from time to time be in effect in the State of New York.

**Unpaid Landlord Obligations Amount**: As such term is defined in the definition of Occupancy Conditions.

**Unpaid TILC Obligation Amount**: As such term is defined in the definition of Occupancy Conditions.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

**Usable Square Feet:** A Tenant's usable area (sometimes referred to as "carpetable area") is the amount of square footage that the Tenant can use for its business purposes as calculated using a standard of measurement defined by Building Owners and Manager Association (BOMA).

**Zoning Requirements**: As such term is defined in Section 13.29(l).

Defined terms not otherwise defined herein shall have the meanings ascribed to such terms in the Project Loan Agreement.

## 2.2    Principles of Construction.

All references to sections and schedules are to sections and schedules in or to this Agreement unless otherwise specified. Any reference in this Agreement or in any other Loan Document to any Loan Document shall be deemed to include references to such documents as the same may hereafter be amended, modified, supplemented, extended, replaced and/or restated from time to time (and, in the case of any note or other instrument, to any instrument issued in substitution therefor). Unless otherwise specified, the words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. Unless otherwise specified, all meanings attributed to defined terms herein shall be equally applicable to both the singular and plural forms of the terms so defined. The word "include(s)" when used in this Agreement and the other Loan Documents means "include(s), without limitation," and the word "including" means "including, but not limited to." Unless otherwise expressly provided, capitalized terms used in referenced defined terms or provisions or Schedules or Exhibits, as the case may be, shall have the meanings assigned to such capitalized terms in the specific Loan Document in which such defined terms or provisions appear or to which such Schedules or Exhibits are appended. All terms defined in this Agreement shall, unless otherwise defined therein, have the same meanings when used in the Note, the Mortgage, the other Loan Documents, or any certificate or other document made or delivered pursuant hereto.

## ARTICLE 3
## SENIOR LOAN AND SENIOR LOAN DOCUMENTS

## 3.1    Agreement to Lend and Borrow.

Subject to the terms, provisions and conditions of this Agreement and the other Loan Documents, Borrower agrees to borrow from Lender and Lender shall disburse to Borrower from the proceeds of the Senior Loan in accordance with the provisions of Section 3.2. The Senior Loan shall be repaid in accordance with the terms of this Agreement and the Senior Note. Any portion of the Senior Loan borrowed and repaid hereunder may not be re-borrowed. The proceeds of the Senior Loan shall be used to pay (i) the amount required to pay off any existing mortgages encumbering the Property, (ii) costs and expenses incurred in connection with the closing of the Senior Loan, as approved by Lender, and (iii) certain costs and expenses of completing the Project not covered by the Building Loan.

## 3.2    Conditions Precedent to Making the Building Loan.

(a)    Borrower agrees that Lender's obligation to close the Senior Loan is conditioned upon (a) Borrower's payment to Lender of the Loan Origination Fee, (b) Lender's sole determination that the Loan is not greater than seventy percent (70.0%) of the Appraised Value of the Property as of the Closing Date on an "as is" basis and sixty percent (60.0%) of the Appraised Value of the Property as of the Closing Date on an "as stabilized" basis, (c) Borrower's entering into and purchasing the Interest Rate Agreement and the Counterparty's acknowledging and consenting to the assignment thereof to Lender, and (c) Borrower's execution, delivery, performance, making or satisfaction, as applicable, of each of the following, all of

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 09/15/2021

which shall be acceptable to Lender in its sole and absolute discretion: (1) all items and conditions precedent to making the Loan set forth in that certain Term Sheet dated April 12, 2019 and accepted by Borrower on April 23, 2019 (the "**Term Sheet**"), (2) all items on that certain closing checklist issued by Lender with respect to such Term Sheet, (3) all conditions precedent to making the Loan as set forth in this Agreement and the other Loan Documents, (4) this Agreement and the other Loan Documents, (5) Borrower's Equity Contribution, subject to the provisions of Section 3.2(b) of the Project Loan Agreement, (6) legal opinions for the benefit of Lender issued by counsel for Borrower and Principal, and (7) such other documents, instruments or certificates as Lender and its counsel may require, including such documents as Lender deems necessary or appropriate to effectuate the terms and conditions of this Agreement and the other Loan Documents, and to comply with the laws of the State of New York.

 (b) <u>Title Insurance and Related</u>. Lender shall have received and approved a commitment for title insurance in an amount and issued by a title insurance company satisfactory to lender. On the Closing Date, Lender shall receive the Title Policy, acceptable to Lender in its sole discretion, insuring marketability of title and insuring that the lien of the Mortgage is a valid first lien on the Property, subject only to exceptions to title approved by Lender. The Title Policy shall also contain any reinsurance and endorsements required by Lender, including, without limitation, deletion of creditors' rights provisions, and the inclusion of the ALTA 3.1 comprehensive, survey, access, variable rate, and extended coverage endorsements, to the extent available in the state where the Property is located.

 (c) <u>Commitment Fee</u>. Borrower shall have paid the Commitment Fee to Lender.

 (d) <u>General Contractor Approval</u>. Lender shall have provided its prior written approval of Contractor, based upon Lender's review of Contractor's financial statements, background information, and such other and further information relative to Contractor that Lender may request.

**3.3** **<u>Intentionally Omitted</u>.**

**3.4** **<u>Intentionally Omitted</u>.**

**3.5** **<u>Term of the Loan</u>.**

 (a) The term of the Loan shall commence on the Closing Date and shall end on the Initial Maturity Date, provided that (subject to Section 3.5(b)) Borrower shall have the right to extend the Initial Maturity Date (the "**First Extension Option**") for an additional twelve (12) month term, thereby extending the Initial Maturity Date to the First Extended Maturity Date, and (subject to Section 3.5(c)) Borrower shall have the right to extend the First Extended Maturity Date (the "**Second Extension Option**") for an additional twelve (12) month term, thereby extending the First Extended Maturity Date to the Second Extended Maturity Date.

 (b) Borrower may exercise the First Extension Option only upon satisfying the following conditions:

  (i) Borrower shall have delivered to Lender written notice of its election to exercise the same no earlier than one hundred twenty (120) days and no later than sixty (60) days prior to the Initial Maturity Date:

  (ii) Lender shall have received Borrower's and each Principal's most recent financial statements, certified as correct by Borrower and Principals. There must be no Material Adverse Change in Borrower's or any Principal's financial condition;

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM          INDEX NO. 655493/2021
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 09/15/2021

(iii)    Completion of the Improvements shall have occurred in accordance with all requirements of this Agreement;

(iv)    Borrower's notice of its election to extend the Initial Maturity Date is accompanied by a non-refundable extension fee equal to $78,000.00;

(v)    No Default or Event of Default then exists under the Loan Documents;

(vi)    Project Yield must be equal to or greater than seven percent (7.0%), calculated as of two (2) months prior to the Initial Maturity Date;

(vii)    Borrower shall have entered into a new Interest Rate Agreement, which shall have an expiration date not earlier than the First Extended Maturity Date; and

(viii)    The maturity date of the Mezzanine Loan shall have been extended to the First Extended Maturity Date.

(c)    Borrower may exercise the Second Extension Option only upon satisfying the following conditions:

(i)    The First Extension Option shall have theretofore been exercised by Borrower and the term of the Loan shall have theretofore been extended to the First Extended Maturity Date;

(ii)    Borrower shall have delivered to Lender written notice of its election to exercise the same no earlier than one hundred twenty (120) days and no later than sixty (60) days prior to the First Extended Maturity Date;

(iii)    Lender shall have received Borrower's and each Principal's most recent financial statements, certified as correct by Borrower and Principals.  There must be no Material Adverse Change in Borrower's or any Principal's financial condition;

(iv)    Completion of the Improvements shall have occurred in accordance with all requirements of this Agreement;

(v)    Borrower's notice of its election to extend the First Extended Maturity Date is accompanied by a non-refundable extension fee equal to $130,000.00;

(vi)    No Default or Event of Default then exists under the Loan Documents;

(vii)    Project Yield must be equal to or greater than seven and twenty-five one hundredths percent (7.25%), calculated as of two (2) months prior to the First Extended Maturity Date;

(viii)    Borrower shall have entered into a new Interest Rate Agreement, which shall have an expiration been extended to a date not earlier than the Second Extended Maturity Date; and

(ix)    The maturity date of the Mezzanine Loan shall have been extended to the Second Extended Maturity Date.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

3.6    **Interest**.

(a)    <u>Interest Rate</u>. Provided that no Event of Default exists (in which event the Default Rate shall be applicable), the principal amount of the Senior Loan outstanding from time to time shall bear interest until paid at the Applicable Interest Rate.

(b)    <u>Computation</u>. Interest at the Applicable Interest Rate shall be calculated based on a three hundred sixty (360) day year and charged for the actual number of days elapsed.

(c)    <u>Funding Losses</u>.

(i)    Borrower hereby agrees to pay to Lender any amount necessary to compensate Lender and any Funding Party for any losses or costs (including, without limitation, the costs of breaking any LIBOR Rate contract, if applicable, or funding losses determined on the basis of Lender's or such Funding Party's reinvestment rate and the interest rate thereon) (collectively, "**Funding Losses**") sustained by Lender or any Funding Party: (i) if the Loan, or any portion thereof, is repaid for any reason whatsoever on any date other than a Monthly Payment Date; (ii) as a consequence of (A) any increased costs that Lender or any Funding Party may sustain in maintaining the borrowing evidenced hereby, or (B) the reduction of any amounts received or receivable from Borrower, in either case, due to the introduction of, or any change in, any law or any applicable regulation or treaty (including the administration or interpretation thereof), whether or not having the force of law, or due to the compliance by Lender or the Funding Party, as the case may be, with any directive, whether or not having the force of law, or request from any central bank or domestic or foreign governmental authority, agency or instrumentality having jurisdiction; and/or (iii) any other set of circumstances not attributable to Lender's or a Funding Party's acts. Payment of Funding Losses hereunder shall be in addition to any obligation to pay the Minimum Interest Payment.

(ii)    If Lender determines (i) that U.S. dollar deposits in an amount approximately equal to the then outstanding principal balance of the Loan are not generally available at such time in the London Interbank Market for deposits in Eurodollars, (ii) that the rate at which such deposits are being offered will not adequately and fairly reflect the cost to Lender or a Funding Party of maintaining the Applicable Interest Rate on the Loan (or the portion of the  Loan being funded by such Funding Party), or of funding the same in such market for such Interest Period, due to circumstances affecting the London Interbank Market generally, (iii) that reasonable means do not exist for ascertaining the LIBOR Rate, or (iv) that the Applicable Interest Rate would be in excess of the maximum interest rate which Borrower may by law pay, then, in any such event, Lender shall so notify Borrower and, as of the date of such notification with respect to an event described in <u>clause (ii)</u> or <u>clause (iv)</u> above, or as of the expiration of the applicable Interest Period with respect to an event described in clause (i) or clause (iii) above, interest on the Loan shall accrue at the Alternative Rate (unless the Default Rate shall be applicable), until such time as the situations described above are no longer in effect, or as otherwise provided herein; provided, however, if the situation described in <u>clause (ii)</u> above occurs, (x) Borrower shall have the option, to be exercised by written notice to Lender, to pay Lender (in the manner reasonably required by Lender) for such increased cost of maintaining the Interest Rate, and (y) if the same only affects a portion of the Loan, then only such portion shall have interest accrue at the Alternative Rate (provided the remaining portion of the Loan is at least One Million and No/100 Dollars ($1,000,000.00)), and interest shall continue to accrue on the remaining portion of the Loan at the Applicable Interest Rate.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

(iii)   If the introduction of, or any change in, any law, regulation or treaty, or in the interpretation thereof by any governmental authority charged with the administration or interpretation thereof, shall make it unlawful for Lender or any Funding Party to maintain the Applicable Interest Rate with respect to the Loan, or any portion thereof, or to fund the Loan, or any portion thereof, in Eurodollars in the London Interbank Market, then (i) the Loan (or such portion of the Loan) shall thereafter bear interest at the Alternative Rate (unless the Default Rate shall be applicable), and (ii) Borrower shall pay to Lender the amount of Funding Losses (if any) incurred in connection with such conversion.  The accrual of interest at the Alternative Rate as aforesaid shall continue until such Monthly Payment Date, if any, as the situation described in this Section 3.6(c)(iii) is no longer in effect.

(iv)   If Lender or a Funding Party, as the case may be, shall have determined that the applicability of any law, rule, regulation or guideline adopted pursuant to or arising out of the July 1988 report of the Basel Committee on Banking Regulations and Supervisory Practices entitled "International Convergence of Capital Measurement and Capital Standards," or the adoption of any other law, rule, regulation or guideline (including, but not limited to, any United States law, rule, regulation or guideline) regarding capital adequacy, or any change becoming effective in any of the foregoing or in the enforcement or interpretation or administration of any of the foregoing by any court or any domestic or foreign governmental authority, central bank or comparable agency charged with the enforcement or interpretation or administration thereof, or compliance by Lender or its holding company or such Funding Party or its holding company, as the case may be, with any request or directive regarding capital adequacy (whether or not having the force of law) of any such authority, central bank or comparable agency, has or would have the effect of reducing the rate of return on the capital of Lender, Lender's holding company, such Funding Party or such Funding Party's holding company, as the case may be, to a level below that which Lender or its holding company or the Funding Party or its holding company, as the case may be, could have achieved but for such applicability, adoption, change or compliance (taking into consideration Lender's or its holding company's or such Funding Party's or its holding company's, as the case may be, policies with respect to capital adequacy) (the foregoing being hereinafter referred to as "**Capital Adequacy Events**"), then, upon demand by Lender, Borrower shall pay to Lender, from time to time, such additional amount or amounts as will compensate Lender or such Funding Party for any such reduction suffered.

(v)   Any amount payable by Borrower under this Section 3.6(c) shall be paid to Lender within ten (10) days of receipt by Borrower of written notice from Lender setting forth the amount due and the basis for the determination of such amount.  Failure on the part of Lender to demand payment from Borrower for any such amount attributable to any particular period shall not constitute a waiver of Lender's right to demand payment of such amount for any subsequent or prior period.  Lender shall use reasonable efforts to deliver to Borrower prompt notice of any event described in this Section 3.6(c) and of the amount to be paid as a result thereof; provided, however, that any failure by Lender to so notify Borrower shall not affect Borrower's obligation to make the payments to be made as a result thereof.  All amounts that may become due and payable by Borrower in accordance with the provisions of this Section 3.6(c) shall constitute additional interest hereunder and shall be secured by the Mortgage and the other Loan Documents.

(vi)   If Lender or any Funding Party requests compensation for any out of pocket losses or costs to be reimbursed pursuant to any one or more of the provisions of this Section 3.6(c), or if any event occurs which would cause any portion of the Loan no longer to bear interest at the Interest Rate, then, upon request of Borrower, Lender or such Funding Party shall use reasonable efforts, in a manner consistent with such institution's practice in connection with loans similar to

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

the Loan, to designate a different lending office for funding or booking the Loan or to assign its rights and obligations under the Loan and the Loan Documents to another of its offices, branches or affiliates if such designation or assignment, in Lender's sole but good faith judgment, (i) would eliminate, mitigate or reduce amounts payable by Borrower in connection with Funding Losses or Capital Adequacy Events or, would allow the Loan to continue to bear interest at the Interest Rate without additional cost to Lender, and (ii) would not be otherwise prejudicial to Lender. Borrower hereby agrees to pay all out of pocket costs and expenses incurred by Lender or any Funding Party in connection with any such designation or assignment.

(d)    Default Interest.  In the event that, and for so long as, any Event of Default shall have occurred and be continuing, the outstanding principal balance of the Loan shall accrue interest at a rate per annum equal to the Default Rate, calculated from the date the event occurred which led to such an Event of Default without regard to any grace or cure periods contained herein.

(e)    Usury Savings.  This Agreement and the other Loan Documents are subject to the express condition that at no time shall Borrower be required to pay interest on the principal balance of the Loan at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the Maximum Legal Rate.  If by the terms of this Agreement or the other Loan Documents, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of the Maximum Legal Rate, the Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to the Maximum Legal Rate and all previous payments in excess of the Maximum Legal Rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.  All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the sums due under the Loan, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan until payment in full so that the rate or amount of interest on account of the Loan does not exceed the Maximum Legal Rate from time to time in effect and applicable to the Loan for so long as the Loan is outstanding.

(f)    Withholding Taxes.  Borrower agrees to pay to Lender such additional amounts (collectively, the "**Gross-up Amounts**") as are necessary in order that the net payment of any amount due hereunder or under any of the other Loan Documents to Lender, after deduction for or withholding of any present or future tax imposed by the United States or any other jurisdiction (subject, in either case, to the provisions of this Section 3.6(f)), excluding Excluded Taxes of Lender, will be the amount that would be required to be paid hereunder in the absence of such deduction or withholding.  In the event that Borrower is obligated to pay any additional amounts described in the first sentence of this Section in respect of the Loan, Lender shall make commercially reasonable efforts to change the jurisdiction of its Applicable Lending Office if, in the reasonable judgment of Lender, doing so would eliminate or reduce Borrower's obligation to pay such additional amounts and would not be disadvantageous to Lender.

## 3.7    Senior Loan Payments.

(a)    Monthly Interest Payments.  Borrower shall make a payment to Lender of interest only on the Closing Date for the period from the Closing Date through and including July 10, 2019. Commencing on August 11, 2019 and continuing on each Monthly Payment Date, Borrower shall make payments of interest on the outstanding principal balance of the Loan calculated in arrears at the Interest Rate (unless the Default Rate shall be applicable in which event interest shall be so calculated at the Default Rate).

(b)    Accrued Interest.  Accrued interest on the Loan shall be payable in arrears monthly on each Monthly Payment Date during the term of the Loan; provided, that interest payable at the Default Rate following an Event of Default shall be payable from time to time on demand of Lender.  In any event, upon

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

INDEX NO. 655493/2021

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 09/15/2021

the payment or prepayment of any portion of the Loan, accrued, unpaid interest on the principal amount so paid or prepaid shall be due and payable.

      (c)    <u>Payment on Maturity Date</u>.  Borrower shall pay to Lender the outstanding principal balance of the Loan, all accrued and unpaid interest and all other Indebtedness due under the Loan Documents on the Maturity Date.

      (d)    <u>Intentionally Omitted.</u>

      (e)    <u>Minimum Interest Payment</u>.  Upon repayment of the Loan in full (whether on the Maturity Date or on any other date) or upon the acceleration of the Loan by Lender as provided herein, Borrower shall pay to Lender the Minimum Interest Payment.  The Minimum Interest Payment shall be deemed earned upon the execution of this Agreement, and Borrower hereby acknowledges and agrees that the Minimum Interest Payment is a bargained for consideration and a material inducement to Lender's making the Loan and is not a penalty.

      (f)    <u>Late Charge</u>.  If payments of principal (other than the final payment of principal), Monthly Interest Payments, or any other amounts due hereunder or under the Note or the other Loan Documents are not timely made, Borrower, without notice or demand by Lender, promptly shall pay the Late Charge with respect to said delinquent payment in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of the delinquent payment.  Any Late Charge shall be secured by the Mortgage and the other Loan Documents to the extent permitted by applicable law.

      (g)    <u>Prepayments</u>.

      (i)    Provided no Event of Default has occurred and is continuing under this Agreement or any of the other Loan Documents, and subject to the provisions of this <u>Section 3.7(g)</u>, Borrower shall have the right to make a voluntary prepayment of the Loan in whole, but not (except as otherwise provided in <u>Section 13.29</u>) in part; <u>provided</u> Borrower (i) gives Lender written notice of such prepayment not more than fifteen (15) days and not less than five (5) Business Days prior to the date of such prepayment; (ii) in all cases, such prepayment is accompanied by all interest accrued on the amount so prepaid up to and including the date of prepayment, if any; <u>provided</u>, <u>however</u>, that if such prepayment occurs on a day other than a Monthly Payment Date, Borrower shall also pay to Lender interest at the Interest Rate on the amount so prepaid through, but not including, the next succeeding Monthly Payment Date; and (iii) in all cases, such prepayment is accompanied by all other fees and sums due hereunder and under the other Loan Documents up to and including the date of prepayment, including, without limitation, the Minimum Interest Payment and compensation (if any) required to be paid to Lender in connection with such prepayment pursuant to <u>Section 3.6(c)</u>.  Notwithstanding anything to the contrary set forth in this Agreement, no prepayment shall be permitted from and including the day following any Monthly Payment Date through and including the next LIBOR Rate Determination Date succeeding such day.

      (ii)    Notwithstanding anything to the contrary in <u>Section 3.6(f)(i)</u>. in the event Borrower receives any payment or deposit proceeds with respect to a purchase contract or other agreement (including, without limitation, forfeited earnest money deposits). or a Lease of the Property (other than scheduled rental payments and expense reimbursements), including, without limitation, lease termination or cancellation payments, judgment awards recovered from any Tenant, retention of nonrefundable deposits or similar fees (other than Lease Sweep Lease Termination Payments, which shall be deposited into the Lease Sweep Account in accordance

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

with <u>Section 3.4(e)</u>), such payment shall be made to Lender and shall be applied by Lender to prepay the principal balance of the Loan.

(h)    <u>Method and Place of Payment</u>.  Except as otherwise specifically provided herein, all payments and prepayments under this Agreement and the Note shall be made to Lender not later than 2:00 P.M., New York City time, on the date when due, and shall be made in lawful money of the United States of America in immediately available funds at the Applicable Lending Office, and any funds received by Lender after such time shall, for all purposes hereof, be deemed to have been paid on the next succeeding Business Day.  For purposes of making payments hereunder, but not for purposes of calculating interest accrual periods, whenever any payment to be made hereunder or under any other Loan Document shall be stated to be due on a day that is not a Business Day, the due date thereof shall be the immediately preceding Business Day.

(i)    <u>No Set-Off</u>.  All payments required to be made by Borrower hereunder or under the Note or the other Loan Documents shall be made irrespective of, and without deduction for, any setoff, claim or counterclaim and shall be made irrespective of any defense thereto.

**3.8    <u>Distribution of Cash Flow</u>.**

(a)    Borrower shall cause all Gross Revenue to be applied on a monthly basis for the following purposes and in the following order of priority:

(i)    First, to establish and fund the tax and insurance reserves required hereunder;

(ii)    Next, the balance, if any, to the payment of the Operating Expenses approved by Lender;

(iii)    Next, the balance, if any, to Lender to make the monthly interest and payments due and payable on the Loan;

(iv)    Next, the balance, if any, to establish and fund any other Reserves to be funded by Borrower hereunder;

(v)    Next, the balance, if any, to Lender for the payment of any other amounts then due and payable under the Loan Documents; and

(vi)    Last, all amounts remaining after payment of the amounts set forth in <u>clauses</u> <u>(i)</u> through <u>(v)</u> above (the "**Available Cash**"):

(A)    during a Cash Trap Period continuing due to a Lease Sweep Period (regardless of whether any other Cash Trap Period is continuing), to the Lease Sweep Account to be held and disbursed in accordance with <u>Section 3.4(e)</u>; or

(B)    during a Cash Trap Period other than a Cash Trap Period continuing due to a Lease Sweep Period, to the Cash Collateral Account to be held or disbursed in accordance with <u>Section 3.4(f)</u>; or

(C)    provided no Cash Trap Period is continuing. disbursed to Borrower.

(b)    Notwithstanding the foregoing, upon the occurrence and during the continuance of an Event of Default, (i) Borrower shall have no right to apply Gross Income from Operations for any purpose without Lender's prior written approval and the release and application of funds shall be pursuant to the terms and conditions of <u>Section 10.2</u>, and (ii) Lender shall have all of

{01535670;3}

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

the remedies available to it pursuant to this Agreement and pursuant to Applicable Laws, including, without limitation, the institution of all of Lender's controls respecting deposits into and distributions from the Cash Collateral Account as more particularly set forth herein, and the exercise by Lender of the remedies specified in Section 4.2 and Article 10 hereof.

## ARTICLE 4
## FINANCIAL REPORTING COVENANTS

**4.1**    **Financial Information Reporting.**

Incorporation of Project Loan Agreement Provisions.  The provisions of Article 4 of the Project Loan Agreement are hereby incorporated by reference with the same force and effect as if set forth at length herein in their entirety.

## ARTICLE 5
## OPERATIONAL AND OTHER COVENANTS

**5.1**    **Borrower's Covenants.**

Incorporation of Project Loan Agreement Provisions.  The provisions of Article 5 of the Project Loan Agreement are hereby incorporated by reference with the same force and effect as if set forth at length herein in their entirety.

## ARTICLE 6
## BORROWER'S REPRESENTATIONS AND WARRANTIES

**6.1**    **Borrower's Representations and Warranties.**

Incorporation of Project Loan Agreement Provisions.  The provisions of Article 6 of the Project Loan Agreement are hereby incorporated by reference with the same force and effect as if set forth at length in their entirety.

## ARTICLE 7
## SINGLE PURPOSE MATTERS

**7.1**    **Single Purpose.**

Incorporation of Project Loan Agreement Provisions.  The provisions of Article 7 of the Project Loan Agreement are hereby incorporated by reference with the same force and effect as if set forth at length in their entirety.

## ARTICLE 8
## ENVIRONMENTAL MATTERS

**8.1**    **Environmental Representations and Warranties.**

Incorporation of Project Loan Agreement Provisions.  The provisions of Article 8 of the Project Loan Agreement are hereby incorporated by reference with the same force and effect as if set forth at length in their entirety.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 09/15/2021

## ARTICLE 9
## INSURANCE, CASUALTIES AND CONDEMNATION

**9.1**    **Insurance**.

Incorporation of Project Loan Agreement Provisions.  The provisions of Article 9 of the Project Loan Agreement are hereby incorporated by reference with the same force and effect as if set forth at length in their entirety.

## ARTICLE 10
## EVENTS OF DEFAULT AND REMEDIES

**10.1**    **Events of Default.**

The occurrence of any one or more of the following shall constitute an "**Event of Default**" as said term is used herein:

(a)    Failure of Borrower to pay (i) any portion of the Indebtedness in full on the Maturity Date, (ii) the Monthly Interest Payment or any required deposits to the Funds on or before the related Monthly Payment Date, (iii) any portion of the Minimum Interest Payment when due, (iv) any portion of the Balancing Funds or the Interest Reserve Balancing Funds when due, or (v) any other portion of the Indebtedness within five (5) days of when due;

(b)    Failure of Borrower strictly to comply with the following provisions of the Project Loan Agreement: Section 5.2(b) (transfers and change of control), Sections 5.2(d), (e) and (f) and 9.1 (insurance, taxes and other charges), Section 5.2(h) (Deposit Account), Section 5.3(n) (no additional debt or encumbrances), Sections 5.3(o) and 7.1(g) (organizational documents), Section 5.3(s) (OFAC), Section 5.2(v) (interest rate agreement), Article 7 (single purpose entity), and Article 8 (environmental matters);

(c)    Failure of Borrower for a period of thirty (30) days after written notice from Lender, to observe or perform any non-monetary covenant or condition contained in this Agreement or any other Loan Documents not set forth in the subsections above; and provided further that if a different notice or grace period is specified under any other subsection of this Section 10.1 with respect to a particular breach, or if another subsection of this Section 10.1 applies to a particular breach and does not expressly provide for a notice or grace period, the specific provision shall control;

(d)    Any material default by Borrower, as lessor, under the terms of any Major Lease or Lease Sweep Lease following the expiration of any applicable notice and cure period, provided that if the Major Lease Sweep Lease does not provide a notice and cure period, then the notice and cure period provided in (a) above will apply to any such monetary default, and the notice and cure period provided in (c) will apply to any such non-monetary default (which respective periods shall commence upon written notice of default from Lender or the applicable Tenant, whichever occurs first), or if any Major Lease or Lease Sweep Lease is modified, amended, supplemented, restated, extended, surrendered, terminated or entered into without the prior written consent of Lender, to the extent that such consent is required pursuant to the provisions of Section 5.1(a):

(e)    If any warranty, representation, statement, report or certificate made now or hereafter by Borrower or any Principal is untrue or incorrect in any material respect at the time made or delivered, provided that if such breach is reasonably susceptible of cure, then no Event of Default shall exist so long as the applicable party cures said breach (i) by the due date provided in (a) above for a breach that can be

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM          INDEX NO. 655493/2021

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 09/15/2021

cured by the payment of money or (ii) within the notice and cure period provided in (c) above for any other breach;

(f)     A Bankruptcy Action is taken by or against any Borrower Party or any SPC Party or an attachment or execution is levied against any of the Property;

(g)     If any voucher or invoice is fraudulently submitted by Borrower in connection with any advance or disbursement of Loan proceeds for services performed or for materials used in or furnished for the Property;

(h)     If the Project is not completed by the Completion Date (as such date may be extended in accordance with Section 5.1(h)) or Borrower expressly confesses in writing to Lender its inability to continue or complete construction of the Project in accordance with the terms of this Agreement;

(i)     Intentionally Omitted;

(j)     Intentionally Omitted;

(k)     If the Property becomes subject to any mechanics', materialman's or other lien other than a Lien for local real estate taxes and assessments not then due and payable and the lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of forty-five (45) days;

(l)     If Borrower attempts to assign its rights under this Agreement or any of the other Loan Documents or any interest herein or therein in contravention of the Loan Documents

(m)     If any Affiliate of Borrower files or records any lien with respect to the Property or any portion thereof;

(n)     If one or more judgments or decrees shall be entered against Borrower, Mezzanine Borrower or any Principal involving in the aggregate a liability in excess of $100,000.00 and such judgment or decree is not bonded or dismissed within sixty (60) days; and/or

(o)     The occurrence of any other event or circumstance constituting an Event of Default herein or a breach, default or event of default under any of the other Loan Documents and the expiration of any applicable grace or cure periods, if any, specified for such Event of Default herein or breach, default or event of default therein, as the case may be.

## 10.2    Remedies Conferred Upon Lender.

(a)     Upon the occurrence and during the continuance of an Event of Default, all or any one or more of the rights, powers, privileges and other remedies available to Lender against Borrower under this Agreement or any of the other Loan Documents executed and delivered by, or applicable to, Borrower or at law or in equity may be exercised by Lender at any time and from time to time, whether or not all or any of the Indebtedness shall be declared due and payable, and whether or not Lender shall have commenced any foreclosure proceeding or other action for the enforcement of its rights and remedies under any of the Loan Documents with respect to the Property. Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singly, successively, together or otherwise, at such time and in such order as Lender may determine in its sole discretion, to the fullest extent permitted by law, without impairing or otherwise affecting the other rights and remedies of Lender permitted by law, equity or contract or as set forth herein or in the other Loan Documents. Without limiting the generality of the foregoing, Borrower agrees that if an Event of Default has occurred (i) Lender is not subject to any "one action" or

{01535670;3}                                    - 32 -

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

"election of remedies" law or rule, and (ii) all liens and other rights, remedies or privileges provided to Lender shall remain in full force and effect until Lender has exhausted all of its remedies against the Property and the other Collateral, and the Mortgage has been foreclosed, sold and/or otherwise realized upon in satisfaction of the Indebtedness or the Indebtedness has been paid in full.

(b)      Lender shall have the right from time to time following the occurrence and during the continuance of an Event of Default to partially foreclose upon the Collateral, the Mortgage in any manner and for any amounts secured by the Collateral and the Mortgage then-due and payable as determined by Lender in its sole discretion, including, without limitation, the following circumstances:  (i) in the event Borrower defaults beyond any applicable grace period in the payment of one or more scheduled payments of principal (if any) and interest, Lender may foreclose the Collateral and the Mortgage to recover such delinquent payments, or (ii) in the event Lender elects to accelerate less than the entire outstanding principal balance of the Loan, Lender may foreclose upon the Collateral and the Mortgage to recover so much of the principal balance of the Loan as Lender may accelerate and such other sums secured by the Collateral and the Mortgage as Lender may elect.  Notwithstanding one or more partial foreclosures, the Property shall remain subject to the Mortgage to secure payment of sums secured by the Collateral and the Mortgage and not previously recovered.

(c)      Lender shall have the right from time to time to sever each Note and the other Loan Documents into one or more separate notes, mortgages and other security documents (the "**Severed Loan Documents**") in such denominations as Lender shall determine in its sole discretion for purposes of evidencing and enforcing its rights and remedies provided hereunder; provided that (i) the total principal amounts of the Loan (including any component notes) shall equal the total principal amount of the Loan immediately prior to the severance, (ii) except during the continuance of an Event of Default, the weighted average interest rate of the Loan shall, in the aggregate, always equal the interest rate applicable to the Note immediately prior to such severance, (iii) except during the continuance of an Event of Default, the aggregate debt service payments on the Loan shall always equal the aggregate debt service payments which would have been payable under the Loan had the severance not occurred, and (iv) the documents executed in connection with the severance shall not decrease any of Borrower's rights or increase any of Borrower's obligations under the Loan Documents, in each case other than in de minimis respects.  Borrower shall execute and deliver to Lender from time to time, promptly after the request of Lender, a severance agreement and such other documents as Lender shall reasonably request in order to effect the severance described in the preceding sentence, all in form and substance satisfactory to Lender.  Borrower hereby absolutely and irrevocably appoints Lender as its true and lawful attorney, coupled with an interest, in its name and stead to make and execute all documents necessary or desirable to effect the aforesaid severance, Borrower hereby ratifying all that its said attorney shall do by virtue thereof; provided, however, Lender shall not make or execute any such documents under such power until five (5) Business Days after notice has been given to Borrower by Lender of Lender's intent to exercise its rights under such power and Borrower has failed to do so during such three (3) Business Day period.  Except if an Event of Default has occurred and is continuing or as may be required in connection with a Securitization pursuant to Section 12.1 hereof, Borrower shall not be obligated to pay any costs or expenses incurred in connection with the preparation, execution, recording or filing of the Severed Loan Documents, and the Severed Loan Documents shall not contain any representations, warranties, covenants or other material provisions not contained in the Loan Documents and any such representations and warranties contained in the Severed Loan Documents will be given by Borrower only as of the Closing Date or the date of the last advance made hereunder, whichever is later.

(d)      Any amounts recovered from the Property or any other collateral for the Loan after the occurrence of an Event of Default may be applied by Lender toward the payment of any interest and/or principal of the Loan and/or any other amounts due under the Loan Documents in such order, priority and proportions as Lender in its sole discretion shall determine.

{01535670;3}                          - 33 -

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

INDEX NO. 655493/2021

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 09/15/2021

(e)    Upon the occurrence and during the continuance of an Event of Default, Lender may declare its obligations to make advances hereunder to be terminated, whereupon the same shall terminate, and/or declare all unpaid principal of and accrued interest on the Note, together with all other sums payable under the Loan Documents, to be immediately due and payable, whereupon same shall become and be immediately due and payable, anything in the Loan Documents to the contrary notwithstanding, and without presentation, protest or further demand or notice of any kind, all of which are expressly hereby waived by Borrower; provided, however, that Lender may make advances or parts of advances thereafter without thereby waiving the right to demand payment of the Note, without becoming liable to make any other or further advances, and without affecting the validity of or enforceability of the Loan Documents. Notwithstanding and without limiting the generality of the foregoing or anything else to the contrary contained in this Agreement, upon the occurrence and during the continuance of an Event of Default, Lender's obligations to make advances hereunder shall automatically terminate.    Notwithstanding the foregoing, upon the occurrence and during the continuance of any Event of Default under Section 10.1(f) all amounts evidenced by the Note shall automatically become due and payable, without any presentment, demand, protest or notice of any kind to Borrower.

(f)    Upon the occurrence and during the continuance of an Event of Default, Lender may cause the Project to be completed and may enter upon the Property and construct, equip and complete the Project, with such changes therein as Lender may, from time to time, and in its reasonable discretion, deem appropriate.    In connection with any construction of the Project undertaken by Lender pursuant to the provisions of this subsection, Lender may:

(i)    use any funds of Borrower, including, without limitation, any balance which may be held by Lender as security or in escrow, and use any undisbursed portion of the Loan;

(ii)    employ existing contractors, subcontractors, including Major Contractors, agents, architects, engineers and the like, or terminate the same and employ others;

(iii)    employ security watchmen to protect the Property;

(iv)    make such additions, changes and corrections in any plans and specifications as shall, in the reasonable judgment of Lender, be necessary or desirable;

(v)    take over and use any and all Personal Property contracted for or purchased by Borrower or dispose of the same as Lender sees fit;

(vi)    execute all applications and certificates on behalf of Borrower which may be required by any Governmental Authority or Law or Regulation or contract documents or agreements;

(vii)    pay, settle or compromise all existing or future bills and claims which are or may be liens against the Property, or may be necessary for the Completion of the Project of any other Improvements or the clearance of title to the Property, including, without limitation, all taxes and assessments;

(viii)    complete the marketing and leasing of leasable space. if any. in the Improvements. enter into new leases and occupancy agreements of the rentable space in the Property. and modify, amend or terminate existing leases and occupancy agreements, all as Lender shall deem to be necessary or desirable;

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

(ix)    prosecute and defend all actions and proceedings in connection with the construction of the improvements contemplated by the Project or in any other way affecting the Property or the Improvements; and

(x)    take such other action hereunder, or refrain from acting hereunder, as Lender may, in its sole and absolute discretion, from time to time determine, and without any limitation whatsoever, to carry out the intent of this Section 10.2.

Borrower shall be liable to Lender for all reasonable costs paid or incurred for the construction, completion and equipping of the Project, whether the same shall be paid or incurred pursuant to the provisions of this Section or otherwise pursuant to this Agreement or the other Loan Documents, and all reasonable payments made or reasonable liabilities incurred by Lender hereunder of any kind whatsoever shall be deemed advances made to Borrower under this Agreement and shall be added to and become a part of the Indebtedness and be secured by the Mortgage and the other Loan Documents and such excess costs shall be paid by Borrower to Lender within thirty (30) days of receipt of demand, with interest thereon at the Default Rate until paid; and Borrower shall execute such notes or amendments to the Note as may be requested by Lender to evidence Borrower's obligation to pay such excess costs and until such notes or amendments are so executed by Borrower, Borrower's obligation to pay such excess costs shall be deemed to be evidenced by this Agreement.  In the event Lender takes possession of the Property and assumes control of such construction as aforesaid, Lender shall not be obligated to continue such construction longer than Lender shall see fit and may thereafter, at any time, change any course of action undertaken by it or abandon such construction and decline to make further payments for the account of Borrower whether or not the Property shall have been completed.  For the purpose of this Section 10.2, the construction, equipping and completion of the Property shall be deemed to include any action necessary to cure any Event of Default by Borrower under any of the terms and provisions of any of the Loan Documents.

(g)    Upon the occurrence and during the continuance of an Event of Default, Lender may appoint or seek appointment of a receiver, in its sole discretion, without notice and without regard to the solvency of Borrower or the adequacy of the security, for the purpose of preserving the Property, preventing waste, and to protect all rights accruing to Lender by virtue of this Agreement and the other Loan Documents, and expressly to do any further acts as Lender may determine to be necessary to complete the development and construction of the Project.  All expenses incurred in connection with the appointment of such receiver, or in protecting, preserving, or improving the Property, shall be charged against Borrower and shall be secured by the Mortgage and enforced as a lien against the Property.

(h)    Upon the occurrence and during the continuance of an Event of Default, Lender may accelerate the maturity of the Note and any other indebtedness of Borrower to Lender, and demand payment of the principal sum due thereunder, with interest, advances, costs and attorneys' fees and expenses (including those for appellate proceedings), and enforce collection of such payment by foreclosure of the Mortgage or the enforcement of any other collateral, or other appropriate action.

(i)    Upon the occurrence and during the continuance of an Event of Default, Lender may exercise or pursue any other remedy or cause of action permitted under this Agreement or any other Loan Documents, or conferred upon Lender by operation of Law.

(j)    Upon the occurrence and during the continuance of an Event of Default, for the purposes of carrying out the provisions and exercising the rights, powers and privileges granted by or referred to in this Agreement, Borrower hereby irrevocably constitutes and appoints Lender its true and lawful attorney-in-fact, with full power of substitution, to execute, acknowledge and deliver any instruments and do and perform any acts which are referred to in this Agreement, in the name and on behalf of Borrower.  The power vested in such attorney-in-fact is, and shall be deemed to be, coupled with an interest and irrevocable.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

(k)     Except as otherwise expressly set forth herein, Borrower hereby waives to the extent not prohibited by applicable law (a) all presentments, demands for payment or performance, notices of nonperformance (except to the extent required by the provisions hereof or of any other Loan Documents), protests and notices of dishonor, (b) any requirement of diligence or promptness on Lender's part in the enforcement of its rights (but not fulfillment of its obligations) under the provisions of this Agreement or any other Loan Document, and (c) any and all notices of every kind and description which may be required to be given by any statute or rule of law and are not otherwise required to be given hereunder or under any other Loan Document, to the fullest extent permitted by applicable law.

(l)     No course of dealing and no delay or omission by Lender or Borrower in exercising any right or remedy hereunder shall operate as a waiver thereof or of any other right or remedy and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right or remedy. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. No waiver or consent shall be binding upon Lender unless it is in writing and signed by Lender. Lender's exercise of Lender's right to remedy any default by Borrower to Lender or any other Person shall not constitute a waiver of the default remedied, a waiver of any other prior or subsequent default by Borrower or a waiver of the right to be reimbursed for any and all of its expenses in so remedying such default. The making of an advance hereunder during the existence of an Event of Default shall not constitute a waiver thereof. All rights and remedies of Lender hereunder are cumulative. No advance of proceeds hereunder, no increase or decrease in the amount of any advance, and no making of all or any part of an advance prior to the due date thereof shall constitute an approval or acceptance by Lender of the work theretofore done or a waiver of any of the conditions of Lender's obligation to make further advances, nor in the event Borrower is unable to satisfy any such condition, shall any such failure to insist upon strict compliance have the effect of precluding Lender from thereafter refusing to make an advance and/or declaring such inability to be an Event of Default as hereinabove provided. All advances shall be deemed to have been made pursuant hereto and not in contravention of the terms of this Agreement.

(m)     The rights, powers and remedies of Lender under this Agreement shall be cumulative and not exclusive of any other right, power or remedy which Lender may have against Borrower pursuant to this Agreement or the other Loan Documents, or existing at law or in equity or otherwise. Lender's rights, powers and remedies may be pursued singly, concurrently or otherwise, at such time and in such order as Lender may determine in Lender's sole discretion. No delay or omission to exercise any remedy, right or power accruing upon the occurrence and during the continuance of an Event of Default shall impair any such remedy, right or power or shall be construed as a waiver thereof, but any such remedy, right or power may be exercised from time to time and as often as may be deemed expedient. A waiver of one default or Event of Default with respect to Borrower shall not be construed to be a waiver of any subsequent default or Event of Default by Borrower or to impair any remedy, right or power consequent thereon.

## ARTICLE 11
## LOAN EXPENSE, COSTS AND ADVANCES

### 11.1    Loan and Administration Expenses.

Borrower unconditionally agrees to pay all out of pocket costs and expenses of the Loan and any and all other fees owing to Lender pursuant to the Loan Documents, and also including all documentation, modification, or workout costs relating to the Loan, recording, filing and registration fees and charges, mortgage or documentary taxes, UCC searches, title and survey charges, all fees and disbursements of Lender's consultants, any costs involved in the disbursement, syndication and administration of the Loan, any repair or maintenance costs or payments made to remove or protect against liens, all out of pocket costs and expenses incurred by Lender in connection with the determination of whether or not Borrower has performed the obligations undertaken by Borrower hereunder or has satisfied any conditions precedent to

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 09/15/2021

the obligations of Lender hereunder and, if any default or Event of Default occurs hereunder or under any of the Loan Documents or if the Loan or Note or any portion thereof is not paid in full when and as due, all out of pocket costs and expenses of Lender incurred in attempting to enforce or collect payment of the Loan or enforce any rights of Lender or Borrower's obligations hereunder and expenses of Lender incurred (including expenses relating to documentary and expert evidence, publication costs) in attempting to realize, while a default or Event of Default exists, on any security or incurred in connection with the sale, disposition (or preparation for sale or disposition) or liquidation of any security for the Loan (including any foreclosure sale of the Property, deed in lieu transaction or costs incurred in connection with any litigation or bankruptcy or administrative hearing and any appeals therefrom and any post-judgment enforcement action including, without limitation, supplementary proceedings in connection with the enforcement of this Agreement). All such costs or expenses incurred or advances or payments made by Lender shall also include court costs, legal fees and disbursements relating thereto and shall be included as additional Indebtedness evidenced by the Note and secured by the Collateral, the Mortgage and the other Loan Documents bearing interest at the Default Rate until paid. Borrower agrees to pay all brokerage, finder or similar fees or commissions payable in connection with the transactions contemplated hereby and shall indemnify, defend and hold Lender harmless against all claims, liabilities, and Expenses arising in relation to any claim by broker, finder or similar person. Lender may require the payment of Lender's outstanding fees and expenses as a condition to any disbursement of the Loan. Lender is hereby authorized, without any specific request or direction by Borrower, to make disbursements from time to time in payment of or to reimburse Lender for all Loan expenses and fees.

**11.2**    **Right of Lender to Make Advances to Cure Borrower's Defaults.**

In the event that Borrower fails to perform any of Borrower's covenants, agreements or obligations contained in this Agreement or any of the other Loan Documents (after the expiration of applicable grace periods, except in the event of an emergency or other exigent circumstances), Lender may (but shall not be required to) perform any of such covenants, agreements and obligations, and any amounts expended by Lender in so doing shall constitute additional Indebtedness evidenced by the Note and secured by the Collateral, the Mortgage and the other Loan Documents and shall bear interest at a rate per annum equal to the Default Rate until paid.

**11.3**    **Increased Costs.**

Borrower agrees to pay Lender additional amounts to compensate Lender for any increase in its actual costs incurred in maintaining the Loan or any portion thereof outstanding or for the reduction of any amounts received or receivable from Borrower as a result of any change after the date hereof in any applicable Law, regulation or treaty, or in the interpretation or administration thereof, or by any domestic or foreign court, changing the basis of taxation of payments under this Agreement to Lender (other than taxes imposed on or measured by the net income or receipts of Lender or any franchise tax imposed on Lender). Any amount payable by Borrower under this Article 11 shall be paid within five (5) days of receipt by Borrower of a notice by Lender setting forth the amount due and the basis for the determination of such amount, which statement shall be conclusive and binding upon Borrower, absent manifest error. Failure on the part of Lender to demand payment from Borrower for any such amount attributable to any particular period shall not constitute a waiver of Lender's right to demand payment of such amount for any subsequent or prior period.

**11.4**    **Document and Recording Tax Indemnification.**

Borrower agrees to indemnify, defend and hold harmless Lender from and against any claim that any documentary or mortgage tax is due and payable in connection with the Loan or the execution, delivery or recording of the Loan Documents and to pay such taxes and Expenses incurred by Lender in connection

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

therewith. Borrower may contest any determination that any such taxes are due, but shall pay any such taxes (including penalties and interest) when legally required. This paragraph shall survive repayment of the Loan or any other event.

## ARTICLE 12
## SECURITIZATION

**12.1**    <u>Sale of Note and Securitization.</u>

<u>Incorporation of Project Loan Agreement Provisions</u>. The provisions of Article 12 of the Project Loan Agreement are hereby incorporated by reference with the same force and effect as if set forth at length herein in their entirety.

## ARTICLE 13
## GENERAL PROVISIONS

**13.1**    <u>Captions.</u>

The captions and headings of various Articles, Sections and subsections of this Agreement and the other Loan Documents and the Exhibits and Schedules pertaining thereto are for convenience only and are not to be considered as defining or limiting in any way the scope or intent of the provisions hereof or thereof.

**13.2**    <u>Lender's Discretion</u>.

(a)    Whenever pursuant to this Agreement Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory shall (except as is otherwise specifically herein provided) be in the sole and absolute discretion of Lender and shall be final and conclusive.

(b)    Whenever pursuant to this Agreement Lender has exercised any right given to it to disapprove any materials submitted in writing from Borrower, any resubmission for reconsideration by Borrower to Lender of such materials must be accompanied by a version of such materials clearly showing (by way of a "blackline", "redline" or otherwise) any changes made from the version of such materials previously submitted. Any time period within which Lender may be obligated by the terms of this Agreement to provide its approval or disapproval shall not commence until such time as Lender shall have received such version showing such changes.

(c)    Lender may, in Lender's sole and absolute discretion, accept or reject any proposed cure of an Event of Default. In no event shall any portion of this Agreement or any of the other Loan Documents which provides that Lender shall have certain rights and/or remedies only upon an Event of Default be construed so as to require Lender to accept a cure of any such Event of Default. Unless and until Lender expressly accepts any proposed cure of an Event of Default in writing, such Event of Default shall be deemed to be continuing for purposes of this Agreement and the other Loan Documents.

**13.3**    <u>Governing Law</u>.

**THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS WERE NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY LENDER AND ACCEPTED BY BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTE DELIVERED PURSUANT HERETO WILL BE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE**

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH OF BORROWER AND LENDER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS, AND THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

13.4    **Jurisdiction.**

ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY AND STATE OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON-CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.  NOTHING IN THIS AGREEMENT OR IN ANY OTHER LOAN DOCUMENT WILL BE DEEMED TO PRECLUDE LENDER FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION. BORROWER DOES HEREBY DESIGNATE AND APPOINT:

> Churchill Real Estate
> 7 Mercer Street, 2nd Floor
> New York, New York 10013
> Attn.: Sorabh Maheshwari

AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER, IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.  BORROWER (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

**SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.**

### 13.5    Waiver of Jury Trial.

**BORROWER AND LENDER EACH HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND TO THE GREATEST EXTENT PERMITTED BY LAW WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  BORROWER AND LENDER ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.**

### 13.6    Modification; Consent.

No modification, amendment, extension, discharge, termination or waiver of any provision of this Agreement or of any other Loan Document, nor consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in a writing signed by the party against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given.  Except as otherwise expressly provided herein, no notice to, or demand on Borrower, shall entitle Borrower to any other or future notice or demand in the same, similar or other circumstances.

### 13.7    Delay Not a Waiver.

Neither any failure nor any delay on the part of Lender or Borrower in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder or under any other Loan Document, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege.  In particular, with respect to the Lender, and not by way of limitation, by accepting payment after the due date of any amount payable under this Agreement or any other Loan Document, Lender shall not be deemed to have waived any right either to require prompt payment when due of all other amounts due under this Agreement or the other Loan Documents, or to declare a default for failure to effect prompt payment of any such other amount.

### 13.8    Waivers; Acquiescence or Forbearance Not to Constitute Waiver of Lender's Requirements.

(a)    Borrower for itself and all endorsers, guarantors and sureties and their heirs, legal representatives, successors and assigns, (i) waives presentment for payment, demand, notice of nonpayment or dishonor, protest of any dishonor, protest and notice of protest and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of the Loan; (ii) waives and renounces all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, or exemption and homestead laws now provided, or which may hereafter be provided, by the laws of the United States and of any state thereof against the enforcement and collection of the obligations evidenced by the Note or this Loan Agreement or as a bar to the enforcement of the lien created by any of the Loan Documents.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

(b)     Borrower for itself and all endorsers, guarantors and sureties and their heirs, legal representatives, successors and assigns, (i) agrees that its liability shall not be in any manner affected by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Lender; (ii) consents to any indulgences and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions of this Loan Agreement, the Note, and to any substitution, exchange or release of the collateral, or any part thereof, with or without substitution, and agrees to the addition or release of any Borrower, endorsers, guarantors, or sureties, or whether primarily or secondarily liable, without notice to Borrower and without affecting its liability hereunder; (iii) agrees that its liability shall be unconditional and without regard to the liability of any other person or entity; and (iv) expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing.

(c)     Each and every covenant and condition for the benefit of Lender contained in this Agreement and the other Loan Documents may be waived by Lender, provided, however, that to the extent that Lender may have acquiesced in any noncompliance with any requirements or conditions precedent to the closing of the Loan or to any subsequent disbursement of Loan proceeds, such acquiescence shall not be deemed to constitute a waiver by Lender of such requirements with respect to any future disbursements of Loan proceeds and Lender may at any time after such acquiescence require Borrower to comply with all such requirements.  Any forbearance by Lender in exercising any right or remedy under any of the Loan Documents, or otherwise afforded by applicable law, including any failure to accelerate the Maturity Date shall not be a waiver of or preclude the exercise of any right or remedy nor shall it serve as a novation of the Note or as a reinstatement of the Loan or a waiver of such right of acceleration or the right to insist upon strict compliance of the terms of the Loan Documents.  Lender's acceptance of payment of any sum secured by any of the Loan Documents after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment.  The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the Loan, nor shall Lender's receipt of any awards, proceeds, or damages under Article 9 of this Agreement operate to cure or waive Borrower's or the Principal's default in payment of sums secured by any of the Loan Documents.

**13.9    Preferences**.

Lender shall have the continuing and exclusive right to apply or reverse and reapply any and all payments by Borrower to any portion of the obligations of Borrower hereunder.  To the extent Borrower makes a payment or payments to Lender, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or proceeds received, the obligations hereunder or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment or proceeds had not been received by Lender.

**13.10   Disclaimer by Lender**.

Lender shall not be liable to any contractors, subcontractors, supplier, architect, engineer, Tenant or other party for labor or services performed or materials supplied in connection with the Property.  Lender shall not be liable for any debts or claims accruing in favor of any such parties against Borrower or others or against the Property.  Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of any matter in connection with the Property.  Borrower shall rely entirely upon its own judgment with respect to such matters, and any review, inspection, supervision, exercise of judgment or supply of information to Borrower by Lender in

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

INDEX NO. 655493/2021

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 09/15/2021

connection with such matters is for the protection of Lender only, and neither Borrower nor any third party is entitled to rely thereon.

**13.11   Partial Invalidity; Severability.**

If any of the provisions of this Agreement or the other Loan Documents, or the application thereof to any person, party or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the other Loan Documents, or the application of such provision or provisions to persons, parties or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law and to this end, the provisions of this Agreement and all the other Loan Documents are declared to be severable.  All covenants and agreements of Borrower and Principal shall be joint and several.

**13.12   Definitions Include Amendments.**

Definitions contained in this Agreement which identify documents, including, but not limited to, the Loan Documents, shall be deemed to include all amendments and supplements to such documents from the date hereof, and all future amendments, modifications, and supplements thereto entered into from time to time to satisfy the requirements of this Agreement or otherwise with the consent of Lender.  Reference to this Agreement contained in any of the foregoing documents shall be deemed to include all amendments and supplements to this Agreement.

**13.13   Entire Agreement.**

This Agreement, taken together with all of the other Loan Documents and all certificates and other documents delivered by Borrower to Lender, embody the entire agreement and supersede all prior commitments, agreements, representations, and understandings, written or oral, relating to the subject matter hereof, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties hereto.

**13.14   Waiver of Damages.**

In no event shall Lender be liable to Borrower for punitive, exemplary or consequential damages, including, without limitation, lost profits, whatever the nature of a breach by Lender of its obligations under this Agreement or any of the Loan Documents, and Borrower for itself and its principals waive all claims for punitive, exemplary or consequential damages.

**13.15   Waiver of Notice.**

Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Agreement or the other Loan Documents specifically and expressly provide for the giving of notice by Lender to Borrower and except with respect to matters for which Borrower is not, pursuant to applicable Legal Requirements, permitted to waive the giving of notice.  Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Agreement or the other Loan Documents do not specifically and expressly provide for the giving of notice by Lender to Borrower.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

**13.16** **Claims Against Lender.**

Lender shall not be in default under this Agreement, or under any other Loan Documents, unless a written notice specifically setting forth the claim of Borrower shall have been given to Lender within three (3) months after Borrower first had knowledge of the occurrence of the event which Borrower alleges gave rise to such claim and Lender does not remedy or cure the default, if any there be, promptly thereafter. Borrower waives any claim, set-off or defense against Lender arising by reason of any alleged default by Lender as to which Borrower does not give such notice timely as aforesaid. No failure by Lender to perform any of its obligations hereunder shall be a valid defense to, or result in any offset against, any payments that Borrower is obligated to make under any of the Loan Documents. The obligations of Borrower under this Agreement and the other Loan Documents shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against any participant by reason of such participant's failure to perform its obligations under this Agreement, including, without limitation, the failure of any participant to fund any advance. Borrower acknowledges that the foregoing waivers are or may be essential to Lender's ability to enforce its remedies without delay and that such waiver therefore constitutes a substantial part of the bargain between Lender and Borrower with regard to the Loan. In the event that a claim or adjudication is made that Lender or its agents have acted unreasonably or unreasonably delayed acting in any case where, by law or under this Agreement or the other Loan Documents, Lender or such agent, as the case may be, has an obligation to act reasonably or promptly, neither Lender nor its agents shall be liable for any monetary damages, and Borrower's sole remedy shall be limited to commencing an action seeking injunctive relief or declaratory judgment. Any action or proceeding to determine whether Lender has acted reasonably shall be determined by an action seeking declaratory judgment. Any expedited procedure legally available with such a declaratory judgment action or action for injunctive relief may be utilized to the extent possible. No Principal or Tenant is intended to have any rights as a third-party beneficiary of the provisions of this Section 13.16.

**13.17** **Set-Offs.**

(a) After the occurrence and during the continuance of an Event of Default, Borrower hereby irrevocably authorizes and directs Lender from time to time to charge Borrower's accounts and deposits with Lender (or its Affiliates), and to pay over to Lender an amount equal to any amounts from time to time due and payable to Lender hereunder, under the Note or under any other Loan Document. Borrower hereby grants to Lender a security interest in and to all such accounts and deposits maintained by Borrower with Lender (or its Affiliates).

(b) Any assignee of Lender's interest in and to this Agreement and the other Loan Documents shall take the same free and clear of all offsets, counterclaims or defenses which are unrelated to such documents which Borrower may otherwise have against any assignor of such documents, and no such unrelated counterclaim or defense shall be interposed or asserted by Borrower in any action or proceeding brought by any such assignee upon such documents and any such right to interpose or assert any such unrelated offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Borrower.

**13.18** **Relationship.**

The relationship between Lender and Borrower shall be that of creditor-debtor only. No term in this Agreement or in the other Loan Documents and no course of dealing between the parties shall be deemed to create any relationship of agency, partnership, joint venture, tenancy in common or joint tenancy or any fiduciary duty by Lender to Borrower or any other party.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

**13.19    No Third Party Beneficiaries**.

This Agreement and the other Loan Documents are solely for the benefit of Lender and nothing contained in this Agreement or the other Loan Documents shall be deemed to confer upon anyone other than Lender any right to insist upon or to enforce the performance or observance of any of the obligations contained herein or therein and no other person or persons shall have any benefits, rights or remedies under or by reason of this Agreement or the other Loan Documents, or by reason of any actions taken by Lender pursuant to this Agreement or the other Loan Documents. All conditions to the obligations of Lender to make advances of the Loan hereunder are imposed solely and exclusively for the benefit of Lender and no other Person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make advances of the Loan in the absence of strict compliance with any or all thereof and no other Person shall under any circumstances be deemed to be a beneficiary of such conditions, any or all of which may be freely waived in whole or in part by Lender if, in Lender's sole discretion, Lender deems it advisable or desirable to do so. Lender is not the agent or representative of Borrower and this Agreement shall not make Lender liable to materialmen, contractors, craftsmen, laborers or others for goods delivered to or services performed by them upon the Property, or for debts or claims accruing to such parties against Borrower and there is no contractual relationship, either express or implied, between Lender and any materialmen, subcontractors, including Major Contractors, craftsmen, laborers, or any other Person supplying any work, labor or materials for the Improvements.

**13.20    Agents.**

In exercising any rights under the Loan Documents or taking any actions provided for therein, Lender may act through its employees, agents or independent contractors as authorized by Lender.

**13.21    Servicer.**

At the option of Lender, the Loan may be serviced by a servicer or trustee (the "**Servicer**") selected by Lender and Lender may delegate all or any portion of its responsibilities under this Agreement and the other Loan Documents to the Servicer pursuant to a servicing agreement (the "**Servicing Agreement**") between Lender and Servicer. Borrower shall be responsible for (a) any reasonable set-up fees or any other initial costs relating to or arising under the Servicing Agreement, and (b) payment of the monthly servicing fee due to the Servicer under the Servicing Agreement. Said servicing fee shall be in addition to, and not a portion of, the Interest Rate on the Loan.

**13.22    Component Notes**.

(a)      Lender may from time to time, without the consent of Borrower or Principal, sell, transfer, pledge, assign, convey or syndicate the Note (or if there is more than one note, each Note), the Loan and the Loan Documents (or any interest therein), and any and all servicing rights with respect thereto, and may grant participations in the Loan, delegate its duties and obligations under the Loan and the Loan Documents, split the Loan into multiple parts, or the Note into multiple component notes or tranches or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in rated or unrated public offerings or private placement. In connection with any such sale, transfer, assignment, conveyance, participation, delegation, syndication, splitting or securitization, Lender may, acting for this purpose as an agent of Borrower, maintain at its offices a register for the recordation of the names and addresses of Lender's participants or assignees, and the amount and terms of Lender's sales, transfers, assignments, conveyances and participations including specifying any such participant's or assignee's entitlement to payments of principal and interest, and any payments made, with respect to each such sale, transfer, assignment, conveyance or participation.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

(b)       Without limiting the generality of the foregoing or Lender's other rights under this Agreement or other Loan Documents, Lender, without in any way limiting Lender's other rights hereunder, in its sole and absolute discretion, shall have the right at any time to require Borrower to execute and deliver "component" notes (including senior and junior notes), which notes may be paid in such order of priority as may be designated by Lender, provided that (i) the aggregate principal amount of such "component" notes shall equal the outstanding principal balance of the Loan immediately prior to the creation of such "component" notes, (ii) the weighted average interest rate of all such "component" notes shall on the date created equal the interest rate which was applicable to the Loan immediately prior to the creation of such "component" notes, (iii) the debt service payments on all such "component" notes shall on the date created equal the debt service payment which was due under the Loan immediately prior to the creation of such component notes and (iv) the other terms and provisions of each of the "component" notes shall be identical in substance and substantially similar in form to the Loan Documents.  Borrower, at its cost and expense (not to exceed $5,000.00), shall cooperate with all reasonable requests of Lender in order to establish the "component" notes and shall execute and deliver such documents as shall reasonably be required by Lender and any Rating Agency in connection therewith, all in form and substance satisfactory to Lender and satisfactory to any Rating Agency, including, without limitation, the severance of security documents if requested.  In the event Borrower fails to execute and deliver such documents to Lender within five (5) Business Days following such request by Lender, Borrower hereby absolutely and irrevocably appoints Lender as its true and lawful attorney, coupled with an interest, in its name and stead to make and execute all documents necessary or desirable to effect such transactions, Borrower ratifying all that such attorney shall do by virtue thereof.

(c)       It shall be an Event of Default under this Agreement, the Note, the Mortgage and the other Loan Documents if Borrower fails to comply with any of the terms, covenants or conditions of this Section 13.22 after expiration of ten (10) Business Days after notice thereof.

### 13.23   Conflict; Construction of Documents; Reliance.

In the event of any conflict between the provisions of this Agreement and any of the other Loan Documents, the provisions of this Agreement shall control.  The parties hereto acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of the Loan Documents and that the Loan Documents shall not be subject to the principle of construing their meaning against the party which drafted same.  Borrower acknowledges that, with respect to the Loan, Borrower shall rely solely on its own judgment and advisors in entering into the Loan without relying in any manner on any statements, representations or recommendations of Lender or any parent, subsidiary or affiliate of Lender.  Lender shall not be subject to any limitation whatsoever in the exercise of any rights or remedies available to it under any of the Loan Documents or any other agreements or instruments which govern the Loan by virtue of the ownership by it or any parent, subsidiary or affiliate of Lender of any equity interest any of them may acquire in Borrower, and Borrower hereby irrevocably waives the right to raise any defense or take any action on the basis of the foregoing with respect to Lender's exercise of any such rights or remedies.  Borrower acknowledges that Lender engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of Borrower or its Affiliates.

### 13.24   Interpretation.

With respect to all Loan Documents, whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender.  The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations.  It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

any time, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language in the Loan Documents. This Agreement and all of the other Loan Documents shall not be construed more strictly against one party than against the other, merely by virtue of the fact that it may have been prepared primarily by counsel for one of the parties.

**13.25   Successors and Assigns.**

Subject to the restrictions on transfer and assignment contained in Section 5.3(b) of this Agreement, this Agreement and the other Loan Documents shall inure to the benefit of and shall be binding on Lender and Borrower and their respective legal representative, successors and permitted (in the case of Borrower) assigns.

**13.26   Time is of the Essence.**

Borrower agrees that time is of the essence under this Agreement and the other Loan Documents and the performance of each of the covenants and agreements contained herein and therein.

**13.27   Notices.**

All notices, demands, requests, consents, approvals or other communications (any of the foregoing, a "**Notice**") required, permitted, or desired to be given hereunder shall be in writing sent by registered or certified mail, postage prepaid, return receipt requested, or delivered by hand or reputable overnight courier addressed to the party to be so notified at its address hereinafter set forth, or to such other address as such party may hereafter specify in accordance with the provisions of this Section 13.27. Any Notice to Lender shall also be delivered to each participant specified below (if any). Any Notice to Borrower shall be effective if rendered in accordance with this Section to Borrower solely. Lender shall use commercially reasonable efforts to provide copies of notices rendered to Borrower to the additional parties specified below, but the failure to effect any such Notice to such additional party shall not affect the validity and full force and effect of such Notice upon Borrower. Any Notice shall be deemed to have been received: (a) three (3) days after the date such Notice is mailed, (b) on the date of delivery by hand if delivered during business hours on a Business Day (otherwise on the next Business Day), and (c) on the next Business Day if sent by an overnight commercial courier, in each case addressed to the parties as follows:

If to Borrower:

257-263 W 34th Street LLC
Churchill Real Estate
7 Mercer Street, 2nd Floor
New York, New York 10013
Attention: Sorabh Maheshwari

With a copy to:

Jeffery Zwick & Associates, PC
266 Broadway. Suite 403
Brooklyn, New York 11211
Attention: Ilan A. Lerman, Esq.

If to Lender:

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

Marathon Real Estate Debt Fund, L.P.
c/o Marathon Asset Management, LP
One Bryant Park, 38th Floor
New York, New York 10036
Attention: Craig Thaler

With a copy to:

Cassin & Cassin LLP
711 Third Avenue
New York, New York 10017
Attention: Michael J. Hurley, Esq.

Any notice or demand delivered to the person or entity named above to accept notices and demands for such party shall constitute notice or demand duly delivered to such party, even if delivery is refused.

**13.28   Mezzanine Loan.**

(a)      Borrower shall (or shall cause Mezzanine Borrower to), from time to time, obtain from Mezzanine Lender such certificates of estoppel with respect to compliance by Mezzanine Borrower with the terms of the Mezzanine Loan Document and the continuing validity and enforceability of the Intercreditor Agreement as may be requested by Lender.

(b)      Borrower shall not permit or suffer Mezzanine Borrower to enter into any amendment or modification to the Mezzanine Loan Documents without Lender's prior written consent which may be withheld in Lender's sole and absolute discretion.

(c)      Except as otherwise consented to by Lender in writing (in Lender's sole and absolute discretion), Borrower shall not cause, suffer or permit Mezzanine Borrower to prepay all or any portion of the Mezzanine Loan unless and until the Loan has been repaid in full and all of Borrower's obligations hereunder and under the other Loan Documents have been performed in full.

(d)      Borrower hereby acknowledges and agrees that the Intercreditor Agreement will be solely for the benefit of Lender and Mezzanine Lender, and that Borrower and Mezzanine Borrower shall not be intended third party beneficiaries of any of the provisions therein, shall have no rights thereunder and shall not be entitled to rely on any of the provisions contained therein. Borrower's obligations hereunder are and will be independent of any such Intercreditor Agreement and shall remain unmodified by the terms and provisions thereof.

(e)      Notwithstanding anything to the contrary contained in this Agreement, Borrower hereby agrees that if any action or proposed action by Mezzanine Borrower is consented to or approved by Mezzanine Lender pursuant to the terms of the Mezzanine Loan Agreement or Mezzanine Lender otherwise grants its consent or approval to any other item pursuant to the terms of the Mezzanine Loan Agreement, such consent or approval shall not be binding or controlling on Lender to the extent that Lender has the right to consent to or approve any such action. proposed action or other item pursuant to the terms of this Agreement. Borrower acknowledges and agrees that (i) the risks of Mezzanine Lender in making the Mezzanine Loan are different from the risks of Lender in making the Loan, (ii) in determining whether to grant, deny, withhold or condition any requested consent or approval with respect to any action, proposed action or other item as to which each of Mezzanine Lender and Lender have consent or approval rights, Mezzanine Lender and Lender may reach different conclusions and (iii) Lender has an absolute independent right to grant, deny, withhold or condition any requested consent or approval with respect to any action,

{01535670;3}                                          - 47 -

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

proposed action or other item as to which each of Mezzanine Lender and Lender have consent or approval rights based on its own point of view, but subject to the standards of consent set forth in this Agreement.

**13.29    Release of Transferable Development Rights.**

Notwithstanding anything to the contrary contained herein or in the other Loan Documents, provided that (i) Borrower shall have satisfied all of the conditions of this Section 13.29, (ii) there exists no Event of Default, and (iii) Borrower provides Lender with ten (10) days' prior written notice, Borrower may obtain a release of the Transferable Development Rights described on Schedule 13.29 attached hereto and made a part hereof (the "**TDRs**") from the lien of the Mortgage and Lender shall release the lien of the Mortgage with respect to the TDRs.

(a)    Lender shall be satisfied that, upon the release of the TDRs, title to the TDRs shall be held in fee simple by a third party, unaffiliated with Borrower, Sponsor, or Guarantor ("**TDRs Transferee**").

(b)    the full amount (including both cash and the cash value of any like-kind or other non-cash consideration) of the net sales proceeds shall have been paid to Lender as a repayment of the Loan without any Minimum Interest (i.e., the gross sales price less all ordinary and reasonable closing costs paid to parties that are not Affiliates of Borrower or Guarantor, which costs shall in no event exceed five percent (5.0%) of the gross sales price).

(c)    After the release of the TDRs, Borrower and any SPE Component Entity shall remain in compliance with all terms and provisions of Section 7.1 hereof.

(d)    If required by Lender, Borrower shall procure from the title company insuring the lien of the Mortgage an amended legal description and an endorsement to Lender's title policy which shall, among other things, provide that the lien and priority of the Mortgage on the portion of the Property remaining after giving effect to the release of the TDRs (individually, a "**Remaining Parcel**" and collectively, the "**Remaining Parcels**") shall be unaffected as a result of the release of the TDRs and shall contain such other terms and endorsements as Lender shall require, but in no event reducing the coverage afforded by the title policy issued on the date hereof to Lender in respect of the Mortgage.

(e)    Borrower shall deliver to Lender an "officer's certificate" executed by a duly authorized principal of Borrower certifying that all of the requirements set forth in this Section 13.29 have been satisfied.

(f)    After the release of the TDRs, the Remaining Parcels must be in full compliance with all applicable zoning (including, without limitation, if applicable, parking requirements), land use and similar laws, rules, regulations and ordinances of all governmental authorities having or claiming jurisdiction thereover and all other applicable laws (collectively, "**Zoning Requirements**").

(g)    Borrower shall submit to Lender a draft "Zoning Lot Development Agreement" or other similar agreement evidencing the TDRs for approval in accordance with the terms and conditions hereof, which approval shall not be unreasonably withheld or delayed.

(h)    Borrower shall, at Borrower's sole expense, (i) execute and record in the land records any instrument required by applicable law to be recorded to evidence the release and transfer of the TDRs, (ii) execute any additional documents required by Lender, including an amendment to this Loan Agreement if required, and allow such documents to be recorded or filed in the land records, and (iii) provide evidence reasonably acceptable to Lender that the development of any improvements or construction of any kind shall not be permitted in the air space above the Improvements currently located at the Property.

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

      (i)      Borrower shall pay all out-of-pocket costs and expenses, including reasonable attorney's fees, incurred by Lender in connection with the release contemplated herein.

Upon satisfaction of the foregoing conditions, Borrower shall convey the TDRs to a third party, and Lender shall promptly release the lien of the Mortgage with respect to the TDRs in writing (in form and substance reasonably acceptable to Lender and Borrower).

**13.30**   <u>**Execution in Counterparts.**</u>

      This Agreement and the other Loan Documents may be executed in any number of counterparts and by different parties hereto or thereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

[SIGNATURE PAGE FOLLOWS]

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

Signature Page to Senior Loan Agreement

EXECUTED as of the date first set forth above.

**BORROWER:**

**257-263 W 34TH STREET LLC**, a
New York limited liability company

By: **257-263 W 34TH SPE LLC**, a
Delaware limited liability company
Its Managing Member

By: _____
Name:      Sorabh Maheshwari
Title:      Authorized Signatory

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

**LENDER:**

**MARATHON REAL ESTATE DEBT FUND, L.P.,** a
Delaware limited partnership

By:_____
Name:  Craig Trahle
Title:  Authorized Signer

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM    INDEX NO. 655493/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 09/15/2021

## EXHIBIT A

Legal Description of Land

**Parcel A – Old Lot 11**

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

**BEGINNING** at a point on the northerly side of West 34th Street, distant 170 feet 10 inches easterly from the northeasterly corner of 8th Avenue and West 34th Street;

**RUNNING THENCE** northerly parallel with 8th Avenue up to and through the center of a party wall partly standing on the lot hereby conveyed and the lot next westerly adjoining and beyond the same in all 98 feet 9 inches to the center line of the block between West 34th and 35th Streets;

**THENCE** easterly along said center line and parallel with West 34th Street, 12.33 feet;

**THENCE** southerly parallel with 8th Avenue, up to and through the center of another party wall partly standing on the lot hereby conveyed and the lot next easterly adjoining and beyond the same in all 98 feet 9 inches to 34th Street aforesaid;

**THENCE** westerly along West 34th Street, 12.33 feet to the point or place of **BEGINNING.**

**Parcel B – Old Lot 10**

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

**BEGINNING** at a point in the northerly side of 34th Street, distant 147 feet 11 inches easterly from the corner formed by the intersection of the northerly side of West 34th Street, with the easterly side of 8th Avenue;

**RUNNING THENCE** northerly parallel with the easterly side of 8th Avenue and for part of the distance through a party wall, 98 feet 9 inches to the center line of the block;

**THENCE** easterly along said center line, 22 feet 11 inches;

**THENCE** southerly again parallel with the easterly side of 8th Avenue and part of the distance through another party wall, 98 feet 9 inches to the northerly side of West 34th Street; and

**THENCE** westerly along the said northerly side of West 34th Street, 22 feet 11 inches to the point or place of **BEGINNING.**

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM

NYSCEF DOC. NO. 2

INDEX NO. 655493/2021

RECEIVED NYSCEF: 09/15/2021

**Parcel C – Old Lot 8**

Part 1 - (Older Lot 8)

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

**BEGINNING** at a point on the northerly side of West 34th Street 103 feet 4 inches easterly from the northeasterly corner of 8th Avenue and West 34th Street;

**RUNNING THENCE** northerly and parallel with 8th Avenue and partly through a middle of the party wall 98 feet 9 inches to the middle line of the block;

**THENCE** easterly along the said middle line and parallel with West 34th Street 21 feet 8 inches;

**THENCE** southerly and parallel with 8th Avenue partly through the middle of a certain other party wall 98 feet 9 inches to the northerly side of West 34th Street;

**THENCE** westerly along the said northerly side of West 34th Street 21 feet 8 inches to the point or place of **BEGINNING.**

**TOGETHER** with all the right, title and interest of, in and to all that strip of land immediately adjoining above premises west thereof and now enclosed with the same and being bounded and described as follows:

**BEGINNING** at a point on the westerly side of said above described premises distant 78 feet 9 inches northerly from the northerly side of West 34th Street;

**THENCE** westerly and parallel with West 34th Street 3 feet 4 inches;

**THENCE** northerly and parallel with 8th Avenue 20 feet to the middle line of the block;

**THENCE** easterly along the said middle line 3 feet 4 inches;

**THENCE** southerly along the westerly side of said above described premises 20 feet to the point or place of **BEGINNING**.

Part 2 - (Older Lot 9)

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

**BEGINNING** at a point on the northerly side of West 34th Street distant 125 feet easterly from the northeasterly corner of West 34th Street and the easterly side of 8th Avenue;

**RUNNING THENCE** northerly to and through the center of a party wall and beyond the same, 98 feet 9 inches to the center line of the block;

**THENCE** easterly along said center line of the block, 23 feet more or less;

**THENCE** southerly and through the center of another party wall and beyond the same in all 98 feet 9 inches to the said northerly side of West 34th Street aforesaid; and

**THENCE** westerly along the said northerly side of West 34th Street 23 feet, be the same more or less to the point of **BEGINNING.**

FILED: NEW YORK COUNTY CLERK 09/15/2021 04:26 PM
NYSCEF DOC. NO. 3

INDEX NO. 655493/2021
RECEIVED NYSCEF: 09/15/2021

# EXHIBIT B